company's status as a reliable mail carrier, I respectfully dissent.

**Ex parte Dustin DOAN, Appellant.**

**No. PD–1547–10.**

Court of Criminal Appeals of Texas.

June 20, 2012.

Terence W. Kirk, Austin, Attorneys for Appellant.

Giselle Horton, Asst. County Atty., Lisa C. McMinn, State's Attorney, Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, COCHRAN, and ALCALÁ, JJ., joined.

The issue in this case is whether the doctrine of *res judicata* applies to bar a

prosecution for a criminal offense in one county after a prosecutor in another county unsuccessfully attempted to revoke the defendant's community supervision on the ground that he committed the same offense.

The Third Court of Appeals "h[e]ld that it does not, as [a] Brazos County [community-supervision] revocation hearing did not involve the same parties that the Travis County theft prosecution does." [1] We hold that the two prosecutions did involve the same parties.

## I. Proceedings Below

After the appellant was placed on community supervision in Brazos County, the Travis County Attorney charged him with a misdemeanor theft in Travis County. The Brazos County Attorney moved to revoke the appellant's community supervision, alleging that the appellant had committed the theft offense in Travis County. At the hearing on the motion to revoke the Brazos County community supervision, the prosecutor called the appellant's probation officer to the stand to ask her how the appellant had violated the condition of community supervision that prohibited committing other crimes. The appellant objected on the basis of hearsay, and the trial judge sustained the objection. The prosecutor made no further effort to introduce evidence of the theft. Finding that the State had failed to meet its burden of proof, the Brazos County court denied the motion to revoke.

In the theft prosecution in Travis County, the appellant filed a pretrial application for a writ of habeas corpus seeking to bar any further prosecution of the theft offense under the doctrine of issue preclusion. The trial court initially granted relief, but, when the State moved for reconsideration on the basis that the Brazos County judge's ruling was too vague to constitute a final adjudication of a specific fact question, the trial court entered an order denying relief. This appeal followed.

In the Court of Appeals, the appellant argued that the trial court erroneously ruled that *Ex parte Tarver*[2] "demand[s] a specific finding of 'Not true' to an allegation in a motion to revoke before the doctrine of [issue preclusion] may be invoked." Without addressing that argument, the Court of Appeals affirmed the trial court's ruling based on its reading of *Reynolds v. State*,[3] in which (adopting the concurring opinion in *State v. Brabson* )[4] we held that for issue-preclusion purposes the Department of Public Safety and a district attorney's office should not be considered the same parties.

While the Court of Appeals noted that the parties and circumstances in this case differ from those in *Reynolds* and *Brabson*, it cited those cases in concluding that the Travis County Attorney and the Brazos County Attorney were different parties for the purposes of issue preclusion.[5] The Court of Appeals gave two reasons: (1) The instant case did not involve a person

---

1. *Ex parte Doan*, 322 S.W.3d 896, 898 (Tex. App.-Austin, 2010).

2. 725 S.W.2d 195 (Tex.Cr.App.1986).

3. 4 S.W.3d 13, 17 (Tex.Cr.App.1999).

4. 976 S.W.2d 182, 186 (Tex.Cr.App.1998) (Womack, J., concurring) (stating that the "crucial point" is "whether or not in the

earlier litigation the representative of the government had authority to represent its interests in a final adjudication of the issue in controversy," and concluding that "[t]he Department of Public Safety does not have such general authority to represent the interests of prosecutors").

5. *Doan*, 322 S.W.3d, at 901.

"criminally prosecuted twice for the same event," so double-jeopardy protections were inapplicable. (2) "[T]he Brazos County Attorney and the Travis County Attorney are independent entities with no control over each others' decision-making processes. This means, crucially, that the Brazos County Attorney had no authority to represent the interests of the Travis County Attorney."

## II. The Tension Between *Reynolds* and *Brabson*

The fact that the Brazos and Travis County Attorneys do not control each others' decision-making processes may well mean that they do not have "authority" to represent each other in court, but the appellant presents us with a more fundamental argument. His assertion, in essence, is that in a community supervision revocation proceeding and in a criminal trial, both styled, "The State of Texas v. Dustin Doan," the State is the same party in both cases, regardless of which prosecuting authority represents the State.

At first glance, we appear to have decided that exact issue in *Reynolds:*

> While there is some merit to the position that the Texas Department of Public Safety and a District Attorney represent the same client which is the citizens of this State, these governmental entities nevertheless should not be considered the same parties for [issue preclusion] purposes in cases like this. The citizens of this State have no power, as does a private litigant, to control the course of the litigation by the lawyers representing these governmental enti-

ties. These lawyers exercise governmental powers in the public interest. They do not represent any private citizen interest as does a private lawyer.[6]

Each sentence in that paragraph is accurate, on its own. But if the last three sentences are understood as the basis for the holding in the first sentence, the rule becomes stunningly broad. If the reason that the Dallas County District Attorney was not bound by an adverse determination made in a hearing where a DPS attorney represented the State is because the citizens of Texas could not control either attorney, then *Reynolds* would seem to make any government action immune from claims of *res judicata*, because in our republican system the citizenry cannot directly control any government attorney. Taken further, this rule could even seem to prevent courts from requiring government appellate attorneys to stand by the actions and arguments of government trial attorneys, as the citizens of Texas have no ability to control either and both are exercising powers in the public interest.

■ This has not been how we or the courts of appeals have understood *Reynolds.*[7] That is understandable, since *Reynolds* adopted the concurring opinion in *Brabson.* The *Brabson* concurrence set forth a much narrower test for considering government agencies to be the same party (or in privity) for purposes of *res judicata*: "whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication on the merits."[8] This question, not the overly-broad blanket state-

---

**6.** *Reynolds,* 4 S.W.3d, at 17.

**7.** *See, e.g., Doan,* 322 S.W.3d, at 900–01 (applying "the parties analysis set forth in *Reynolds*" by analyzing whether the Travis County Attorney and Brazos County Attorney could control each other).

**8.** *Brabson,* 976 S.W.2d, at 188 (Womack, J., concurring) (citing *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263 (1940)).

ment from *Reynolds,* is the correct test for whether a judgment involving one government agency is *res judicata* in a suit involving another government agency.

To answer that question in this case, we must look at the procedures and issues involved in the Brazos County revocation hearing and in the Travis County criminal prosecution, and ask whether the government prosecutors had the same interests and authority to litigate to a final adjudication.

III. The Nature of Revocation Hearings

A community supervision revocation hearing is distinct from a criminal trial, but are its issues and procedures similar enough to a criminal trial to bind parties in future criminal trials? To determine whether prosecutors in a revocation hearing can represent the interests of prosecutors at future criminal trials, we must reexamine some of our prior notions of what interests are at stake in revocation hearings.

We have stated more than once that revocation proceedings are "administrative in nature."[9] We began using the label as a result of confusion about federal law, and we have expanded on that confusion over the years. Using the word "administrative" became a way of stating that defendants in revocation hearings do not enjoy the same panoply of procedural rights as defendants in criminal trials. This is true, as far as it goes, but our characterization of a judicial proceeding as an administrative proceeding is, on its face, inaccurate. Moreover, we have used the "administrative" label to imply that we would not strictly enforce procedural rules

at revocation hearings, which was an injudicious and inaccurate implication.

The first case to refer to a revocation proceeding as "administrative" seems to have been *Hill v. State:*

> A [community supervision] revocation hearing is not an adversarial proceeding, a civil action, or a criminal prosecution. *Hyser v. Reed* [318 F.2d 225 (D.C.Cir. 1963) ]; *Hood v. State* [458 S.W.2d 662 (Tex.Cr.App.1970) ] instead, it is administrative in nature, a means of protecting society and rehabilitating lawbreakers. *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir.1970); *United States ex rel. Lombardino v. Heyd* [318 F.Supp. 648 (E.D.La.1970) ].[10]

None of the cited cases, however, supports the proposition that a Texas community supervision revocation proceeding is "administrative in nature." The only Texas case cited, *Hood,* states that a community supervision revocation is not a " 'trial' as that term is used by the Constitution," even if the act for which revocation is sought is a criminal offense, and therefore the appellant was not entitled to a jury at his revocation hearing. Holding that a revocation hearing is not a trial, though, does not mean that it is an administrative hearing, and *Hood* did not say that it did.

The other cases either deal entirely with federal law or confuse federal law with the law of another state.

*Hyser* dealt with federal constitutional claims lodged by federal parolees against the federal government in relation to their parole revocation hearing before the United States Board of Parole, an administrative agency.

---

9. *Hill v. State,* 480 S.W.2d 200, 202–03 (Tex. Cr.App.1972) (op. on rehear.); *see, e.g., Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Cr.App. 1993) (referring to revocation proceeding as an "administrative hearing").

10. 480 S.W.2d, at 202–03.

*Sperling* was a habeas corpus application by a federal parolee alleging that the United States Board of Parole, an administrative agency, violated his federal constitutional rights by revoking his parole based on illegally seized evidence.

*Lombardino* was a federal case from Louisiana where the petitioner alleged that the state trial court violated his federal constitutional rights by revoking his community supervision based on illegally seized evidence. The federal district court in *Lombardino* rejected this claim because, based on *Hyser* and *Sperling,* a community supervision proceeding is "administrative in nature." *Lombardino* ignored any differences between federal parole revocation proceedings, which actually are decided by an administrative agency, and a Louisiana community supervision revocation proceeding, which seems to have been held in an open court in front of a trial judge.

None of these cases discuss the procedures of a Texas community supervision revocation proceeding, and *Hill* offered no other explanation of why a revocation hearing was an administrative hearing.

If the precedents we cited in *Hill* seem to have ignored the distinctions between parole and community supervision, and between federal and state law, there is good reason for that. *Hill* was decided at a period of time in which the federal Supreme Court was establishing constitutional due process standards for parolees and those on community supervision. Because the procedure for revoking community supervision in Texas is unusually judicial and adversarial, it was not obvious how the Texas community supervision system fit into the federal regime.

The federal due-process minimum was established by *Morrissey v. Brewer,*[11] in which the Supreme Court held that before parole could be revoked by an administrative agency a parolee was entitled to (1) a preliminary hearing before an officer other than the supervising parole officer, to determine whether reasonable ground exists for revocation of parole, and (2) a hearing before the parole authority before the final decision on revocation.[12] In *Gagnon v. Scarpelli,*[13] the Court extended those due-process requirements to administrative-agency proceedings to revoke probation.

In community-supervision revocations in Texas, the Code of Criminal Procedure does not provide for the preliminary hearing required by *Morrissey* and *Scarpelli.* Is this a denial of due process? Apparently it is not. A Texas probationer presented to the Supreme Court the question, "Does Texas Code of Criminal Procedure art. 42.12[, § 21], which does not require state to hold a preliminary hearing to determine probable cause to believe probationer has violated probation condition, violate, either on its face or as applied, Fourteenth Amendment's Due Process Clause?" After granting review and hearing oral argument, in which the Court heard about Texas's judicial probation-revocation procedure that provides trial-like proceedings, the Supreme Court dismissed the appeal "for want of a properly presented federal question."[14]

The Court's decision that due process does not require Texas to hold a prelimi-

---

11. 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

12. *Cf.* TEX. GOV'T CODE §§ 508.281 & 508.2811 (providing two steps of hearings in parole revocation).

13. 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

14. *Vincent v. Texas,* 449 U.S. 199, 101 S.Ct. 632, 66 L.Ed.2d 391 (1980) (per curiam).

nary hearing in probation revocation probably reflects the difference between the Texas system, which is based in our courts, and the administrative system which was before the Court in *Scarpelli*. In that case the Court noted that a probation-revocation hearing in an administrative agency is unlike

> [A] criminal trial, [in which] the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights.... In short, a criminal trial under our system is an adversary proceeding with its own unique characteristics. In a revocation hearing, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation [toward rehabilitation]; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole.[15]

A community supervision revocation proceeding in Texas bears little resemblance to the administrative hearing described in *Scarpelli*. In Texas, the State is represented by a prosecutor, the defendant does have a right to counsel,[16] the hearing is before the judge,[17] formal rules of evidence do apply,[18] and there may be appeal directly to a court of appeals.[19] They are conducted entirely within the judicial branch. The Rules of Evidence and the exclusionary rule to bar illegally seized evidence apply fully in a Texas probation revocation hearing.[20] Indeed, aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.[21]

Following *Hill*'s holding that revocation proceedings were administrative proceedings, we applied administrative law to revocation hearings in *Davenport v. State*.[22] After the trial court denied the State's motion to revoke Davenport's community supervision, the State filed a second motion for revocation two weeks later, alleging the exact same facts. This time the trial court revoked.

Davenport appealed to this court, alleging a violation of federal and state double-

15. 411 U.S., at 789, 93 S.Ct. 1756.

16. *See* Tex.Code Crim. Pro. 42.12, § 21(d).

17. *See id.*, § 21(b).

18. *See* Tex.R. Evid. 101(b) (Rules govern criminal proceedings except as provided by statute) & (d)(1) (not mentioning probation-revocation hearings as one of the proceedings to which the Rules do not apply).

19. The thoroughly adversarial nature of a Texas community supervision revocation proceeding shows that *Hill* was incorrect when, based on federal law, it stated that a revocation proceeding was "not an adversarial proceeding."

20. *Compare* Tex.R. Evid. 101(d) (list of criminal proceedings at which Texas Rules of Evidence are inapplicable does not include revocation hearings) to, *e.g.*, Miss R. Evid 1101(b)(3) (Mississippi Rules of Evidence inapplicable at revocation hearings). *See Moore v. State*, 562 S.W.2d 484, 486–87 (Tex.Cr.App. 1978).

21. While we noted that the practice was "not recommended," we have gone so far as to hold that it was not error for a trial court to combine a revocation hearing with a trial on the merits for a new offense. *See Moreno v. State*, 587 S.W.2d 405, 412–13 (Tex.Cr.App. 1979).

22. 574 S.W.2d 73 (Tex.Cr.App.1978) (implicitly overruled in part by *Ex parte Tarver*, 725 S.W.2d 195 (Tex.Cr.App.1986)).

jeopardy protections, as well as a violation of common law *res judicata* principles. After quoting a previous case in which we held that jeopardy attached only in criminal trials that could result in convictions, we held that double-jeopardy protections did not apply to a revocation proceeding because it was

a proceeding wherein the result is deemed to be neither a conviction nor acquittal ... a proceeding that is not considered to be a trial, as that term is used and contemplated by the Constitution in reference to criminal cases ... a proceeding which is not considered to be a criminal prosecution and is considered to be only administrative in nature.[23]

Our statement that the hearing was "only administrative in nature" was a phrase that we used in several cases as something of a pejorative to minimize the importance of procedural and evidentiary requirements in revocation hearings.[24] This seems to be the same manner that we have used the phrase in more recent cases.[25]

In addressing Davenport's *res judicata* claim, we held that "the supervision of [those on community supervision] is an administrative function of the courts and not a judicial function."[26] We determined that "the doctrine of res judicata does not apply" to revocation proceedings because "res judicata does not apply to administrative decision-making."

For this last proposition, we cited to three cases that dealt with administrative law. Two of them, *Bryant v. L.H. Moore Canning Company*[27] and *Railroad Commission v. Phillips*,[28] dealt with decisions by administrative agencies. The third, *Killingsworth v. Broyles*,[29] seems to have dealt with a county judge acting in his administrative capacity to approve or disapprove an application for a license to sell beer. None of the proceedings in these cases seem to have been formal, judicial proceedings like a revocation hearing.

23. *Id.*, at 75 (quotations and citations omitted).

24. *See, e.g., Bradley v. State*, 564 S.W.2d 727 (Tex.Cr.App.1978) ("The hearing on a motion to revoke [community supervision] is not a trial in a constitutional sense, and such a hearing being administrative in nature, procedural and evidentiary requirements are not enforced as strictly as they would be in a criminal trial." (citation omitted)). This statement in *Bradley* may capture the flavor of our "administrative in nature" cases, but it cannot actually be true. If the "procedural and evidentiary requirements" are themselves less strict in a revocation setting, we would not be more lax in enforcing the requirements that did exist simply because it was an "administrative" hearing. Strict enforcement of lax rules should not be confused with lax enforcement of strict rules.

25. *See, e.g., Cobb*, 851 S.W.2d, at 873 (referring to a community-supervision revocation proceeding as "an administrative hearing" before determining that formal proof of the conditions of community supervision was not required). *Cobb*'s note that a revocation proceeding was "an administrative proceeding" was immediately followed by the observation that, "[y]et the Rules of Criminal Evidence are generally applicable to a revocation hearing." Old Rule of Criminal Evidence 101(b) stated that the Rules of Criminal Evidence "govern criminal proceedings in courts of Texas...." The Rules of Criminal Evidence did not state that they applied to administrative hearings.

26. *Davenport*, 574 S.W.2d, at 76.

27. 509 S.W.2d 432 (Tex.Civ.App.-Corpus Christi, 1974, no writ), *cert. den. sub nom. Pope v. Texas*, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 74 (1974).

28. 364 S.W.2d 408 (Tex.Civ.App.-Austin 1963, no writ).

29. 300 S.W.2d 164 (Tex.Civ.App.-Austin 1957, no writ).

*Killingsworth* explained the difference between judicial and administrative proceedings: "In judicial proceedings courts apply law to past facts which remain static and on the other hand administrative bodies are concerned with fluid facts and changing policies." [30] It is true that, in some respects, there is an "administrative" nature to a trial court's decision in a revocation hearing. Even if a community-supervision violation is proven, the trial court has the discretion to continue or modify the terms of community supervision rather than revoking it, and the trial court has the discretion to make this determination based on its weighing of policies, such as protecting the public and rehabilitating the offender.

The fact that a decision includes some policy considerations, however, does not turn a distinctly judicial proceeding into an administrative one. Juries and trial courts weigh policy considerations, with great degrees of discretion, when determining whether to sentence the defendant to community supervision, but we would never characterize the punishment phase of a trial as an administrative proceeding.

■ A Texas community-supervision revocation proceeding involves the application of law to past facts that remain static. It is conducted according to judicial rules before a trial judge, not an administrative agency. Applying administrative law—the law that governs the decision-making processes of administrative agencies—to revocation hearings has no basis in the Code of Criminal Procedure. Community-supervision revocation proceedings are not administrative hearings; they are judicial

proceedings, to be governed by the rules established to govern judicial proceedings.

## IV. Application

■ Our discussion of the many similarities between a Texas revocation proceeding and a criminal trial makes apparent how distinct this case is from *Reynolds*. Reynolds sought to use a ruling from an administrative license revocation hearing—a civil administrative hearing—in a criminal trial.[31] The vast difference in issues and procedure at these proceedings meant that the Department of Public Safety was not capable of representing the interests of the Dallas County District Attorney to a final adjudication.

In this case, however, the issues and procedures were nearly identical in the Travis County and Brazos County proceedings. In both proceedings, prosecutors plead and sought to prove that the appellant committed the same act. Both were criminal, judicial proceedings with nearly identical procedural rules, in which the State was represented by sworn prosecutors. The Brazos County Attorney had the authority to litigate the matter to a final adjudication.[32] The only difference between the interests of the Brazos County Attorney and the Travis County Attorney in this case is that one sought to prove theft in order to criminally punish the appellant for theft, while the other sought to prove theft in order have the appellant's criminal punishment from a prior case altered to his detriment.

This difference is sufficient to allow this case to escape the narrow grasp of the Double Jeopardy clause.[33] But as a mat-

---

**30.** *Killingsworth,* 300 S.W.2d, at 165.

**31.** *Reynolds,* 4 S.W.3d, at 20.

**32.** *See Tarver,* 725 S.W.2d, at 199–200 (discussing ways in which trial courts ruling at a revocation proceeding is a final judgment).

**33.** *Id.,* 197. The dissent states that we are "overrul[ing], *sub silentio,* the holding in *Ex*

ter of state law, a prosecuting authority who alleges a criminal offense in a community supervision revocation hearing represents the same state interests as a prosecuting authority who later alleges the same criminal offense in a trial. The Court of Appeals erred in holding that two prosecuting authorities could not be the same party for *res judicata* purposes.

We reverse the Court of Appeals's judgment and remand the case to that Court so that it may consider the claims briefed by the parties.

JOHNSON, J., filed a concurring opinion in which COCHRAN and ALCALÁ, JJ., joined.

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

JOHNSON, J., filed a concurring opinion in which COCHRAN and ALCALÁ, JJ., joined.

This Court granted review on a single ground: "The Court of Appeals erred in holding that the Brazos County Attorney and the Travis County Attorney were not the 'same parties' for collateral estoppel purposes." That ground was the only issue briefed by the parties. That ground does not require or even ask this Court to resolve the issue of whether collateral estoppel applies. Today the Court resolves the only issue before it, finds that both prosecutor's offices are "the State," and remands the cause to the court of appeals so that it may consider the remaining issue: given that the Brazos County Attorney and the Travis County Attorney are the "same party" for collateral-estoppel purposes, does collateral estoppel apply in the circumstances presented by this cause?

*Ex parte Tarver*, 725 S.W.2d 195 (Tex. Crim.App.1986), examined whether a finding by a district judge—that the evidence of a subsequent offense that was presented as grounds for revoking a felony probation was "totally incredible"—barred prosecution of the subsequent offense in the county court-at-law of the same county. That is not what we are deciding here, and so we need not, at this time, consider the con-

---

parte *Tarver* that double-jeopardy applies to probation revocations." We are not overruling *Tarver*.

The question of whether *Tarver* ruled that double-jeopardy principles applied at a probation revocation hearing is more complex than the dissent implies. *Tarver* itself stated that "basic double jeopardy protections" would not apply to revocation proceedings, before going on to hold that "collateral estoppel"—which, as the dissent observes, can be based in either Constitutional law or common law—barred *Tarver's* prosecution after the facts that the prosecution was based on were found not true at a revocation hearing. While *Tarver* did cite to some federal Supreme Court cases, it is not obvious whether *Tarver's* holding was based in Constitutional law or common law; given *Tarver's* explicit statement that double-jeopardy principles were not implicated by revocation hearings, and given that there were no prior cases from this court applying collateral estoppel, it is possible to read *Tarver* as using the federal cases only as explanations of common-law doctrine.

After reviewing our "administrative in nature" line of cases, Section III, *supra*, it appears that the primary issue in *Tarver* was not whether collateral estoppel in that case was required by the federal Constitution, but, rather, whether *res judicata*, whatever its basis, applied to administrative hearings. *See Tarver*, 725 S.W.2d, at 198–200. *Tarver* overruled *Davenport* by holding that *res judicata* did apply to a revocation hearing because a revocation, though "administrative in nature," involved the trial court acting in a judicial capacity. *Ibid.* In essence, *Tarver* held that, at a revocation hearing, the trial court was acting as an administrative agency acting as a trial court. It was only in holding that "administrative collateral estoppel" applied to Texas revocation proceedings and in stating the rule of collateral estoppel that *Tarver* used the reasoning of federal Supreme Court cases. *See ibid.*

tinuing validity of *Tarver.*[1]

In 1987, the Legislature amended the Code of Criminal Procedure, Article 28.061. At the time of that session, Art. 28.061 provided that

[i]f a motion to set an indictment, information, or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction.

Article 32A.02 provided that

[a] court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) ... [felony];

(2) 90 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days; or

(3) 60 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for 180 days or less or punishable by fine only.

The practical effect of these two articles was an absolute bar to prosecution of a felony if a lower court failed to try the accused on a lesser accusation from the same criminal transaction within the statutory time period. Thus, if a person were accused of failure to signal a turn while fleeing from a robbery that resulted in a death and the municipal prosecutor did not announce ready within 60 days, the felony

prosecutor was barred from ever prosecuting the concurrent felony murder because it was part of the same criminal transaction as the failure to signal.

In 1987, the legislature resolved that issue by adding the words "other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute" to Article 28.061. The amendment clearly treated municipal, county courts, and felony prosecutors as separate classes of parties. However, by using the words "other than an offense of a higher grade that the attorney representing the state and prosecuting the offense that was discharged does not have the primary duty to prosecute," it did not treat prosecutors within a class of prosecutors as a party separate from other prosecutors in the same class. Thus, as the Court decides today, the Brazos County Attorney is the "same party" as the Travis County Attorney.

I join the opinion of the Court.

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, JJ., joined.

The Court makes a convincing argument that a probation-revocation proceeding is not an administrative hearing. But it fails to say what that proposition has to do with whether Travis County and Brazos County are the same party. In my opinion, this gap in the argument is fatal to the Court's ultimate holding.

The question in this case is whether the Travis County Attorney is bound in a

---

1. While the *Tarver* Court did, in footnote 3, "note that one need not be twice placed in jeopardy of criminal punishment in order for collateral estoppel to apply," the footnote continues: "*See One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 233–34, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) (collateral estoppel would bar a civil forfeiture proceeding if the elements of such forfeiture had been resolved against the government in an earlier criminal proceeding.)"

criminal prosecution by what happened in a probation-revocation proceeding that was prosecuted by the Brazos County Attorney. The court of appeals relied upon state-law cases for the proposition that the two governmental entities are not the same party, while appellant relies upon a federal double-jeopardy case [1] to show that they should be treated as the same party. The Court concedes that double-jeopardy principles do not apply in this case,[2] but it holds that the two governmental entities are nevertheless the same party under state law. In so holding, the Court sidesteps appellant's argument, overrules, *sub silentio*, the holding in *Ex parte Tarver* that double-jeopardy applies to probation revocations, and incorrectly analyzes the state-law issue.

I agree that the Double Jeopardy Clause does not apply in cases such as the one before us, but so holding requires that we overrule *Tarver*. We should not overrule precedent by implication, without any explanation, so I would do so expressly, for the reasons set forth. I would also hold that the two prosecuting authorities in the present case are not the same parties under state law.

## I. FEDERAL VERSUS STATE LAW

The Double Jeopardy Clause of the United States Constitution does not bar successive prosecutions brought by different sovereigns.[3] Conversely, the Double Jeopardy Clause may bar successive prosecutions that are brought by the same sovereign.[4] Whether two government entities are different sovereigns depends upon whether they "draw their authority to punish the offender from distinct sources of power."[5] By "distinct sources of power," the Supreme Court means that the sources of power are distinct when viewed from the perspective of the United States Constitution: The federal government,[6] the various states,[7] and Indian tribes are separate sovereigns from each other,[8] but cities are not separate sovereigns from the states in which they exist.[9] How a state constitution distributes power to the governing bodies of the state is irrelevant; those governing bodies are all organs of the state for federal double-jeopardy purposes.[10]

But the distribution of power across state government can be taken into account when considering purely state-law claims.[11] To the extent that a particular

1. *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

2. Court's op. at 212 ("This difference is sufficient to allow this case to escape the narrow grasp of the Double Jeopardy clause").

3. *Heath v. Alabama*, 474 U.S. 82, 88–93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).

4. *Waller*, 397 U.S. at 393–95, 90 S.Ct. 1184.

5. *Heath*, 474 U.S. at 88, 106 S.Ct. 433.

6. *Id.* at 89, 106 S.Ct. 433.

7. *Id.* at 92–93, 106 S.Ct. 433.

8. *Id.* at 89, 92–93, 106 S.Ct. 433 (federal government and states); *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978) (Indian tribes).

9. *Wheeler*, 435 U.S. at 320, 98 S.Ct. 1079 ("[C]ities are not sovereign entities.... Any power it has to define and punish crimes exists only because such power has been granted by the State."); *Waller*, 397 U.S. at 393–95, 90 S.Ct. 1184.

10. *See Waller*, 397 U.S. at 393–95, 90 S.Ct. 1184.

11. *See Reynolds v. State*, 4 S.W.3d 13, 16–17 (Tex.Crim.App.1999) (adopting Judge Womack's concurring opinion in *Brabson* ); *State v. Brabson*, 976 S.W.2d 182, 186–88 (Tex. Crim.App.1998) (Womack, J., concurring) (decentralized nature of Texas state govern-

collateral-estoppel claim derives solely from state law, separate state governmental entities can be separate parties for the purpose of deciding whether a subsequent prosecution is barred.[12] In *Brabson,* for instance, we found that DPS was not the same party as the Dallas County District Attorney for state-law collateral-estoppel purposes.[13]

## II. DOUBLE JEOPARDY

The double-jeopardy question turns upon the continued vitality of *Ex parte Tarver,* where this Court held that if a defendant prevails on a motion to revoke probation, collateral estoppel could bar the later prosecution of an offense that was alleged in the motion to revoke.[14] We held that collateral estoppel applied as a matter of federal constitutional double-jeopardy law.[15] As we shall see below, that holding is out of step with the vast majority of jurisdictions that have addressed the issue. And while our trial-type procedures may distinguish our probation-revocation pro-

ceedings from most other jurisdictions, the applicability of double-jeopardy protections turns, not upon the nature of the proceeding, but upon the potential *result* of the proceeding.[16] As will be explained, the potential result of probation-revocation proceedings is not a result that implicates double jeopardy.

### A. We Are Out of Step with Other Jurisdictions

The vast majority of jurisdictions that have addressed the situation in which a defendant tries to use a prior favorable determination from a probation-revocation proceeding at a later criminal prosecution have held that double-jeopardy protections were not implicated and collateral estoppel did not apply.[17] This is the view of the Fifth and Sixth Circuits;[18] the District of Columbia Court of Appeals;[19] the courts of last resort in Arizona, California, Connecticut, Florida, Maine, Massachusetts, Mississippi, New York, Rhode Island, and Vermont;[20] and intermediate appellate

ment supports treating the DPS and the local prosecutor as different parties).

**12.** *Reynolds,* 4 S.W.3d at 19; *Brabson,* 976 S.W.2d at 183 n. 2, 184 (Court's op.) (In a case that "does not implicate the rule of collateral estoppel as 'embodied in the Fifth Amendment guarantee against double jeopardy,'" DPS and local prosecutor are not the same party for collateral-estoppel purposes.).

**13.** 976 S.W.2d at 184.

**14.** 725 S.W.2d 195, 197–200, 199 n. 4 (Tex. Crim.App.1986).

**15.** *Id.* (discussing issue in light of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)); *see Reynolds,* 4 S.W.3d at 20 n. 17, 21 n. 18 (observing that *Tarver* decided the collateral-estoppel issue as a matter of federal constitutional double-jeopardy law).

**16.** *Reynolds,* 4 S.W.3d at 20 & n. 16.

**17.** *See* this opinion, *post.*

**18.** *Stringer v. Williams,* 161 F.3d 259, 262–63 (5th Cir.1998); *Showery v. Samaniego,* 814 F.2d 200, 201–04 (5th Cir.1987); *United States v. Miller,* 797 F.2d 336, 339–41 (6th Cir.1986).

**19.** *Jones v. United States,* 669 A.2d 724, 727 (D.C.App.1995).

**20.** *State v. Williams,* 131 Ariz. 211, 212–13, 639 P.2d 1036, 1037–38 (1982); *Lucido v. Superior Court of Mendocino County,* 51 Cal.3d 335, 342–52, 272 Cal.Rptr. 767, 795 P.2d 1223, 1226–33 (1990); *State v. McDowell,* 242 Conn. 648, 651–57, 699 A.2d 987, 988–91 (1997); *Green v. State,* 463 So.2d 1139, 1139–40 (Fla.1985); *State v. Reed,* 686 A.2d 1067, 1068–69 (Me.1996); *Krochta v. Commonwealth,* 429 Mass. 711, 713–20, 711 N.E.2d 142, 144–48 (1999); *State v. Oliver,* 856 So.2d 328, 330–32 (Miss.2003); *State v. Hilton,* 95 N.Y.2d 950, 951–52, 722 N.Y.S.2d 461, 745 N.E.2d 381, 381–82 (Ct.App.2000); *Maisonet v. Merola,* 69 N.Y.2d 965, 966, 516 N.Y.S.2d 646, 509 N.E.2d 341, 341 (Ct.App.

courts in Georgia, Michigan, and Wisconsin.[21] Moreover, in declining to apply collateral estoppel in the State's favor, the Supreme Court of Colorado relied upon authorities that declined to apply collateral estoppel in the defendant's favor.[22] And without specifically addressing the collateral-estoppel context, courts of last resort in Kentucky, Montana, and Nebraska have found that double-jeopardy protections are not implicated by probation-revocation proceedings.[23] The Supreme Court of Vermont characterized the position that "double jeopardy does not attach at a revocation hearing to bar a trial of the new criminal charges" as "universally acknowledged,"[24] and said that most courts have also concluded that collateral estoppel does not apply.[25]

Outside of Texas, the cases that take the position that a prior determination in a probation-revocation proceeding can have collateral-estoppel consequences in a subsequent criminal prosecution are sparse, and each of those cases has at least one complicating factor that may undermine its vitality or its relevance to our discussion. The Supreme Courts of Illinois and Oregon have held that, in theory, a probation-revocation proceeding could have collateral-estoppel consequences, but did not find collateral estoppel to apply in the cases before them.[26] In addition, the Illinois court's pronouncement regarding collateral estoppel was based upon both *Ashe* and the court's earlier decision in *People v. Grayson,*[27] but *Grayson* has since been overruled, at least in part.[28] An Illinois court of appeals has applied collateral estoppel to the fact pattern before us, but it too, relied upon the later-overruled *Grayson* case.[29] And the Oregon Supreme

1987); *State v. Gautier,* 871 A.2d 347, 354–61 (R.I.2005); *State v. Brunet,* 174 Vt. 135, 138–44, 806 A.2d 1007, 1010–14 (2002).

**21.** *Coney v. State,* 304 Ga.App. 346, 347, 696 S.E.2d 73, 74 (4th Div.2010); *State v. Jones,* 196 Ga.App. 896, 896–98, 397 S.E.2d 209, 210–11 (1990); *Johnson v. State,* 142 Ga.App. 124, 127, 235 S.E.2d 550, 552–53 (1977); *State v. Johnson,* 191 Mich.App. 222, 223–27, 477 N.W.2d 426, 427–29 (1991); *State v. Terry,* 239 Wis.2d 519, 525–32, 620 N.W.2d 217, 219–22 (Wis.App.2000, review denied). *See also State v. Kaczmarek,* 464 Mich. 478, 482–83, 628 N.W.2d 484, 487 (2001) (Michigan Supreme Court favorably citing *Johnson* from Michigan court of appeals for proposition that "violation of probation is not a crime, and a ruling that probation has been violated is not a new conviction").

**22.** *Byrd v. State,* 58 P.3d 50, 57–59 (Colo. 2002).

**23.** *Thompson v. Commonwealth,* 147 S.W.3d 22, 53–54 (Ky.2004); *State v. Haagenson,* 356 Mont. 177, 182–86, 232 P.3d 367, 371–74 (2010); *State v. Rebecca B.,* 280 Neb. 137, 143–44, 783 N.W.2d 783, 788–89 (2010)

**24.** *Brunet,* 174 Vt. at 141, 806 A.2d at 1011.

**25.** *Id.,* 174 Vt. at 142, 806 A.2d at 1012.

**26.** *People v. Bone,* 82 Ill.2d 282, 286–89, 45 Ill.Dec. 93, 412 N.E.2d 444, 446–47 (1980); *see id.,* 82 Ill.2d at 288, 45 Ill.Dec. 93, 412 N.E.2d at 447; *State v. Donovan,* 305 Or. 332, 334–43, 751 P.2d 1109, 1110–15 (1988); *see id.,* 305 Or. at 343, 751 P.2d at 1115.

**27.** *Bone,* 82 Ill.2d at 288, 45 Ill.Dec. 93, 412 N.E.2d at 447 (citing *People v. Grayson,* 58 Ill.2d 260, 319 N.E.2d 43 (1974)).

**28.** *People v. Colon,* 225 Ill.2d 125, 145–55, 310 Ill.Dec. 396, 866 N.E.2d 207, 219–24 (2007). *Grayson,* which held that an acquittal in a criminal prosecution could be a basis for barring a later attempt to revoke probation despite the lower burden of proof in the latter proceeding, 58 Ill.2d at 264–65, 319 N.E.2d at 45–46, is inconsistent with *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

**29.** *People v. Kondo,* 51 Ill.App.3d 874, 876–79, 9 Ill.Dec. 479, 366 N.E.2d 990, 992–93 (5th Dist.1977). In deciding whether collateral estoppel should apply to the probation-revocation fact situation, *Lucido* found *Kondo* to provide little guidance due to its reliance on

Court case seems to be based upon statute, with no mention in the decision of *Ashe* or of the constitutional guarantee against double jeopardy, except for the bare citation of a law review article entitled "Criminal Law, Double Jeopardy and Res Judicata." [30] The Oregon Court of Appeals has applied collateral estoppel to the fact pattern before us, but it did so expressly as a matter of state statutory law and stated that the case did "not turn on the application of the constitutional standard of double jeopardy (or its ingredient, collateral estoppel as a principal of constitutional law)." [31] In a plurality opinion, the Supreme Court of Pennsylvania gave collateral-estoppel effect to an evidentiary-admissibility ruling from a prior revocation hearing that was in the State's favor.[32] Inferring a double-jeopardy rule

from a plurality opinion in the State's favor would seem difficult enough, but in a later case, the Pennsylvania court said, "Probation is given by grace, not by right. To hold the Double Jeopardy Clause is somehow implicated at a VOP [violation of probation] hearing would elevate something of grace to the status of constitutional dimension." [33]

In holding that double jeopardy is not implicated by a favorable finding in a probation-revocation proceeding, many courts have explained that jeopardy does not attach to probation-revocation proceedings because the purpose of such proceedings is not to punish a criminal defendant for violating the law but to take into custody a person who has shown himself to be unsuitable for probation.[34] Distinguishing

---

*Grayson. Lucido,* 51 Cal.3d at 346 n. 8, 272 Cal.Rptr. 767, 795 P.2d at 1228 n. 8.

**30.** *See Donovan, passim,* 337, 751 P.2d at 1111 (citing Lugar, *Criminal Law, Double Jeopardy and Res Judicata,* 39 Iowa L. Rev. 317, 332–33 (1954)).

**31.** *State v. Bradley,* 51 Or.App. 569, 572, 626 P.2d 403, 405 (1981).

**32.** *Commonwealth v. Holder,* 569 Pa. 474, 480–84, 805 A.2d 499, 503–05 (2002) (plurality op.).

**33.** *Commonwealth v. Mullins,* 591 Pa. 341, 349, 918 A.2d 82, 86 (2007). In *State v. Chase,* 588 A.2d 120 (R.I.1991), *overruled by, State v. Gautier,* 871 A.2d 347 (R.I.2005), the Supreme Court of Rhode Island applied common-law collateral estoppel where the defendant sought to bar criminal prosecution after prevailing in a probation-revocation hearing. *Id.* at 122–24. *Chase* was later overruled by *Gautier. Gautier,* 871 A.2d at 354–60.

**34.** *Stringer,* 161 F.3d at 262 (revocation proceedings "are not designed to punish a criminal defendant for violation of a criminal law"); *Showery,* 814 F.2d at 202–03 (same, and purpose is "ultimately to determine whether the parolee or probationer is a good risk"); *Miller,* 797 F.2d at 341 (purpose of revocation hearing was to establish that pro-

bationer "was a poor probation risk"); *Jones,* 669 A.2d at 727 ("jeopardy does not attach 'in parole, probation, or bond revocation hearings, because these proceedings are not designed to punish a defendant for a violation of a criminal law' "); *Lucido,* 51 Cal.3d at 343 n. 5, 272 Cal.Rptr. 767, 795 P.2d at 1226 n. 5 (double-jeopardy "aspect of collateral estoppel is not raised in this case because jeopardy does not attach in probation-revocation hearings, which do not constitute a 'trial' on a new criminal charge, result in 'conviction,' or integrally relate to 'enforcement' of the criminal laws"); *McDowell,* 242 Conn. at 653–54, 699 A.2d at 989 ("The purpose of a revocation hearing is to determine whether the defendant is a good risk for continued probation and not to punish him for a new criminal offense."); *Oliver,* 856 So.2d at 332 (issues in revocation hearing and criminal prosecution are "very different"); *Haagenson,* 356 Mont. at 183, 232 P.3d at 372 (revocation proceeding is a "purely administrative action designed to determine whether a parolee or probationer has violated the conditions of his parole or probation, not a proceeding designed to punish a criminal defendant for a violation of a criminal law"); *Gautier,* 871 A.2d at 361 ("these proceedings are not designed to punish criminal defendants for violation of a criminal law") (brackets omitted); *Brunet,* 174 Vt. at 140, 806 A.2d at 1011

*Breed,* many courts have held that probation-revocation proceedings are not "essentially criminal" for double-jeopardy purposes.[35] A probation-revocation proceeding does not place the defendant in jeopardy because a revocation hearing is not a criminal prosecution; that is, it is not a proceeding that could result in a conviction.[36] Further, courts have held that a revocation hearing is simply a continuation of the earlier prosecution and so no jeopardy attaches on a new offense that is made the basis of revocation.[37] Some courts have also held that a probation-revocation hearing is not a "valid and final judgment" for collateral-estoppel purposes because it is not a final determination of the probationer's involvement in the new criminal activities.[38]

## B. Trial–Like Nature of Probation–Revocation Proceedings Does Not Mean those Proceedings Implicate Jeopardy

What is important to note about the jurisprudence of other jurisdictions is that

there are generally two holdings: (1) the proceedings at issue do not implicate the collateral-estoppel component of the Double Jeopardy Clause, and (2) collateral estoppel should not apply as a matter of state law for various policy reasons. The procedural differences between probation-revocation procedures in Texas and such procedures in other jurisdictions *may* be a reason to reject the second holding regarding the nonapplicability of state-law collateral estoppel, but those differences have nothing to do with the applicability of double jeopardy.

Double-jeopardy protections apply only if jeopardy attaches.[39] By its terms, the Fifth Amendment protection against double jeopardy applies only to an "offence," and so jeopardy must attach to a particular offense.[40] But what offense was appellant in jeopardy for at the probation-revocation proceedings? He had already been convicted of the offense for which he was on probation. For that unreversed conviction, jeopardy had terminated.[41] And the

("The goal of a revocation hearing is not to decide guilt or innocence, but to determine whether the defendant remains a good risk for probation.").

**35.** *Showery,* 814 F.2d at 202; *McDowell,* 242 Conn. at 653, 699 A.2d at 989; *Brunet,* 174 Vt. at 141, 806 A.2d at 1011. *See also Lucido,* 51 Cal.3d at 343 n. 5, 272 Cal.Rptr. 767, 795 P.2d at 1226 n. 5.

**36.** *Miller,* 797 F.2d at 340; *Lucido,* 51 Cal.3d at 343 n. 5, 272 Cal.Rptr. 767, 795 P.2d at 1226 n. 5; *Coney,* 304 Ga.App. at 347, 696 S.E.2d at 74; *Thompson,* 147 S.W.3d at 54 & n. 109; *Reed,* 686 A.2d at 1068; *Krochta,* 429 Mass. at 713, 711 N.E.2d at 144; *Johnson,* 191 Mich.App. at 226–27, 477 N.W.2d at 429.

**37.** *Jones,* 669 A.2d at 727; *Green,* 463 So.2d at 1140; *Reed,* 686 A.2d at 1068; *Krochta,* 429 Mass. at 713–14, 711 N.E.2d at 144–45; *Haagenson,* 356 Mont. at 183, 232 P.3d at 372; *Rebecca B.,* 280 Neb. at 144, 783

N.W.2d at 789; *Gautier,* 871 A.2d at 361; *Brunet,* 174 Vt. at 140, 806 A.2d at 1011.

**38.** *Miller,* 797 F.2d at 341; *Williams,* 131 Ariz. at 213, 639 P.2d at 1038.

**39.** *York v. State,* 342 S.W.3d 528, 551 & n. 151 (Tex.Crim.App.2011).

**40.** U.S. CONST. amend 5 ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); *Tarver,* 725 S.W.2d at 197 ("The fact that applicant was twice placed in risk of punishment, however, does not mean that he had been subjected to double jeopardy. The double jeopardy proscription of the Fifth Amendment to the United States Constitution protects an accused against being twice placed in jeopardy of punishment for 'the same offence.' ").

**41.** *See Richardson v. United States,* 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) ("The Government, like the defendant, is entitled to resolution of the case by verdict from the jury, and jeopardy does not terminate

*Tarver* court readily acknowledged that probation-revocation proceedings relate to the original offense, not the new offense that is the basis for revocation.[42] *Tarver*'s own pronouncement in this regard should have been the seeds of its own destruction: "In the instant case, if the district court had revoked applicant's probation, the punishment he received would have been for the offense of which he was originally convicted, possession of cocaine. In the county criminal court at law, applicant faces the risk of being punished for the subsequent offense, assault. He is not, therefore, being twice placed in jeopardy for the *same* offense."[43]

But *Tarver* made the following statement, which is contrary to how we now view the collateral-estoppel component of the double-jeopardy guarantee: "We note that one need not be twice placed in jeopardy of criminal punishment in order for collateral estoppel to apply."[44] That statement conflicts with our current understanding of double-jeopardy law, expressed in *York:* "If jeopardy has not attached, then no aspect of double jeopardy, including its collateral-estoppel component, is implicated."[45]

The fact that there are no double-jeopardy consequences *if probation is revoked* means that jeopardy does not attach to revocation proceedings. The *Ashe* case, which originally applied "collateral estoppel" as a component of the Fifth Amendment double-jeopardy guarantee, presents a useful contrast to the probation-revocation scenario.[46] The defendant in *Ashe* was charged with robbing one of six players at a poker game.[47] His acquittal of robbing one poker player on the basis that the defendant was not one of the robbers had the double-jeopardy effect, under the doctrine of collateral estoppel, of precluding a subsequent prosecution for robbery of any of the other victims.[48] In *Ashe,* the defendant was in jeopardy in the first prosecution.

In *Ashe,* certain double-jeopardy consequences would have occurred if the defendant had been convicted. Although a conviction for robbing the first poker player would not have barred the State from prosecuting the robberies of poker players two through six, the State would have been barred from prosecuting the defendant again for robbing the first poker player. But if a defendant's probation is revoked, the State is not barred from prosecuting the offense that was the basis for revocation.[49] "It is totally inconsistent to argue," the Sixth Circuit explained, "that double jeopardy does not attach to a probation-revocation hearing if the government 'wins,' but only attaches if the government 'loses.' Either the defendant is placed in jeopardy when he appears before a judge at the probation-revocation hearing, or he is not."[50] And if a probation-revocation proceeding does not implicate double-jeopardy protections, then the double-jeopardy

when the jury is discharged because it is unable to agree."); *id.* (Brennan, J., dissenting) ("Apparently, under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would 'terminate' jeopardy and thereby bar retrial.").

42. *Tarver,* 725 S.W.2d at 197.

43. *Id.* (emphasis in original).

44. *Id.* at 197 n. 3.

45. 342 S.W.3d at 551 & n. 151 (citing cases).

46. 397 U.S. at 445–46, 90 S.Ct. 1189.

47. *Id.* at 438, 90 S.Ct. 1189.

48. *Id.* at 445–46, 90 S.Ct. 1189.

49. *Tarver,* 725 S.W.2d at 197; *Miller,* 797 F.2d at 341.

50. *Miller,* 797 F.2d at 341.

variant of collateral estoppel cannot apply.[51]

There is no middle ground that can be taken in this area of the law. Jeopardy never "kind of" attaches in a case. Either jeopardy attaches at probation-revocation proceedings or it does not. Most jurisdictions that have addressed the issue conclude that it does not. That conclusion follows naturally from the fact that there is no offense at issue in a probation-revocation proceeding to which jeopardy could attach: jeopardy attaches neither to the original offense, nor to the new charge.

The Fifth Circuit has twice suggested that the holding in *Tarver* was a state-law rule,[52] perhaps because it seemed unfathomable that we would arrive at such a holding as a matter of federal constitutional law. We should explicitly reject *Tarver*'s internally inconsistent reasoning and follow the prevailing view that probation-revocation proceedings do not implicate double-jeopardy protections.

## III. STATE LAW

### A. *Res Judicata* or Collateral Estoppel?

The Court characterizes the issue in the present case as one of *"res judicata,"*[53] despite the fact that the court of appeals and the parties have characterized the issue as "collateral estoppel."[54] In both civil and criminal cases, *"res judicata"* is sometimes used as a broad term to describe both claim preclusion and issue preclusion,[55] but at other times, the term is used in a more narrow sense to refer only to claim preclusion, leaving the concept of issue preclusion to be described as "collateral estoppel."[56] The Court does not say whether it is using the term *res judicata* in the broad sense or the narrow sense. And so I cannot determine whether it believes that the question before it is one of claim preclusion (*res judicata* in the narrow sense) or issue preclusion (collateral estoppel, which is included within *res judicata* in the broad sense). The difference is important because, unlike the doctrine of claim preclusion, the doctrine of issue preclusion may carry limitations in criminal cases that do not exist in civil cases.[57] The relaxation of the traditional principles of collateral estoppel in criminal cases was one reason we concluded in *Reynolds* that it was appropriate to hold that two governmental entities were not the same party for the type of case that was before us.[58]

---

**51.** *Showery*, 814 F.2d at 202; *Miller*, 797 F.2d at 341 (because the "double jeopardy protection does not attach at a probation revocation hearing, *Ashe*, which is a double jeopardy case, provides no support for the defendant"); *Krochta*, 429 Mass. at 713, 711 N.E.2d at 144 ("Without a first incidence of jeopardy, the probationer cannot be in 'double' jeopardy at a subsequent criminal trial.").

**52.** *Stringer*, 161 F.3d at 263; *Showery*, 814 F.2d at 204. *See also Reynolds*, 4 S.W.3d at 20 n. 17 (discussing the erroneous characterization of *Tarver* in *Showery* ).

**53.** Court's op. at 205, 207, 207–08, 211, 211, 213.

**54.** *See Ex parte Doan*, 322 S.W.3d 896, 898 (Tex.App.-Austin, 2010) ("The sole issue in this appeal is whether the doctrine of *collateral estoppel* applies to bar the Travis County Attorney from prosecuting Doan for theft") (emphasis added).

**55.** *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n. 5, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). *See also York*, 342 S.W.3d at 553 (Womack, J., concurring).

**56.** *Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. 892.

**57.** *York*, 342 S.W.3d at 549 (discussing *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980)).

And the question before us is one of issue preclusion, not claim preclusion. Whether a person should be convicted of a crime and whether his probation should be revoked are separate claims. On the other hand, whether a crime was committed is merely an issue that might arise in a probation revocation context. So, here, we are concerned with collateral estoppel.

## B. Collateral Estoppel under State Law

The question here is whether, under *Brabson* and *Reynolds,* the Brazos County Attorney and the Travis County Attorney qualify as separate parties under state law. Judge Womack explained in his concurring opinion in *Brabson* that the distribution of power to prosecute crimes in Texas is decentralized:

> [T]he State of Texas ... has given its authority to prosecute DWI cases to more than three hundred independently elected prosecutors, each of whom exercises authority in an area of the state no larger than a judicial district. This model differs from the federal model ... because there is no central prosecuting authority.[59]

It was the decentralized nature of power that led Judge Womack to conclude that there was no privity between DPS and the local prosecutor.[60] The same reasoning applies to prosecutors from different counties. The Travis County Attorney has no control over how the Brazos County Attorney decides to proceed, and in fact the Travis County Attorney had no authority with respect to the Brazos County drug offense in this case.

The Court engages in a lengthy discussion about the trial-type proceedings required for probation revocations in Texas and how the label of "administrative" is inaccurate.[61] The Court then jumps to the conclusion that the Travis County Attorney and the Brazos County Attorney are the same party. But the Court does not say, and it is not apparent, how the nature of the proceedings has any bearing at all on whether these county attorneys are the same party.

And even if collateral estoppel did apply generally to probation-revocation proceedings,[62] that would, at most, mean that the Travis County attorney would be estopped if he had prosecuted both proceedings. If the Travis County attorney had control over both proceedings, it could be argued that he should be held accountable for any failure of proof in the first proceeding. But as explained above, the Travis County Attorney had no control over the Brazos County Attorney's prosecution of the probation revocation.

The Court acknowledges that the state-law question of whether the two County Attorneys are the same party is "whether or not in the earlier litigation the representative of the government had authority to represent its interests in a final adjudication on the merits." [63] After Judge Womack posed that question in his *Brabson* concurrence, he answered it by saying, "The Department of Public Safety does not have such general authority to represent

---

58. 4 S.W.3d at 18.

59. *Brabson,* 976 S.W.2d at 187 (Womack, J., concurring).

60. *Id.*

61. Court's op. at 207–212.

62. *But see Guajardo v. State,* 109 S.W.3d 456, 468–69 (Tex.Crim.App.2003) (Hervey, J., concurring) (arguing that collateral estoppel does not exist in criminal cases outside the double-jeopardy context).

63. Court's op. at 207 (quoting *Brabson,* 976 S.W.2d at 188 (Womack, J., concurring))

the interests of prosecutors."[64] In the present case the Court says that the "Brazos County Attorney had the authority to litigate the matter to a final adjudication."[65] But that is not the *Brabson* question. The *Brabson* question, as applied to the facts here, is whether the Brazos County Attorney had the authority to represent the interests of the Travis County Attorney. And the answer to that question is indisputably "no."

As explained above, the Travis County Attorney had no authority over the probation-revocation proceedings. Likewise, the Brazos County Attorney had no authority to prosecute the theft offense. And here is where the difference between claim preclusion and issue preclusion becomes crucial. If we were truly concerned with the same claim—if two different prosecuting authorities had concurrent jurisdiction over an offense—then principles of dominant jurisdiction would come into play, typically triggered by the first to file, and a prosecuting authority that failed to file first would essentially yield its authority in the matter.[66] But when the matter is simply the same *issue*, then one prosecuting authority is powerless with respect to how the other prosecuting authority litigates an issue. A defendant's guilt of an offense can be litigated in myriad proceedings other than the trial for that offense. For instance, in addition to probation-revocation proceedings, guilt can be litigated in the punishment phase of another trial, or in a wrongful-death case, or in civil commitment proceedings. The fact that the commission of a crime may be an important fact in a collateral proceeding in another county does not mean that the prosecuting authority in this other county represents the interests of the prosecuting authority for the county in which the crime was committed.

Moreover, the citizens of Travis County have an interest in punishing people who commit crimes within the county, and they have a right to expect that their *elected* representative—in this case the Travis County Attorney—will have the opportunity to prosecute that crime. They did not elect the County Attorney in Brazos County. If the Brazos County Attorney mishandles a case, the Travis County voters cannot hold him accountable. Because the Brazos County Attorney did not have the authority to represent the interests of the Travis County Attorney, the two County Attorneys are not the same party under State law. And because the Travis County Attorney and the Brazos County Attorney are different parties under state law, collateral estoppel does not apply as a matter of state law.

## C. Conclusion

The Brazos and Travis County Attorneys serve the same sovereign under federal double-jeopardy law, but double-jeopardy protections are not implicated in this case because jeopardy does not attach at probation-revocation proceedings. And under *Brabson* and *Reynolds*, these separate prosecuting authorities are different parties under state law because neither has control over the actions of the other. I therefore respectfully dissent.

---

64. *Brabson*, 976 S.W.2d at 188 (Womack, J., concurring).

65. Court's op. at 212.

66. *See Ringer v. State*, 135 Tex.Crim. 573, 575–76, 121 S.W.2d 364 (1938) ("It is a well recognized rule in this State that a court which first acquires jurisdiction of the person and subject matter of the suit, retains it to the exclusion of any other court of co-ordinate jurisdiction.").