COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



REGINALDO DELAROSA, JR.,

§

Appellant,

§

v.

§

THE STATE OF TEXAS,

§

Appellee.

§

§

No. 08-12-00097-CR

Appeal from the

112th Judicial District Court

of Reagan County, Texas

(TC# 1587)

## **O P I N I O N**

Reginaldo Delarosa, Jr. appeals the trial court's judgment revoking his community supervision. In three issues, Delarosa contends that the trial court erred in granting the State's motion to revoke because the allegations in the motion did not comport with due process and because the State failed to prove that the allegations were true. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Delarosa pleaded guilty to possession of cocaine in an amount less than one gram. The trial court assessed Delarosa's punishment at 730 days' confinement, but suspended his sentence and placed him on community supervision for two years. Three weeks later, the State filed a motion to revoke Delarosa's community supervision alleging, in part, that "[he] committed the offense[s] of Aggravated Kidnapping . . . [and] . . . Sexual Assault . . . ."

At the hearing on the State's motion to revoke Delarosa's probation, the State called

Delarosa's former girlfriend, "Elizabeth," as a witness.[1]  Elizabeth testified that Delarosa entered a friend's home without permission, "walked in the room and started hitting me and knocked me on the ground and drug me out by my hair."  According to Elizabeth, Delarosa then did the following to her without her permission:  (1) put her in his truck; (2) banged her head against the window; (3) drove her to his house; (4) pulled her out of the truck when he arrived at his home; (5) threw her on the ground; (6) stepped on her head; and (7) put his fingers in her vagina "to see if [she] was having sex."

After the State rested, Delarosa asked the trial court not to revoke his community supervision because "[t]here's nothing except [Elizabeth's] word that this happened to her."  The trial court was not swayed, however, and found that Delarosa committed the offenses of aggravated kidnapping and sexual assault as alleged in the State's motion to revoke.  The trial court then assessed Delarosa's punishment at 730 days' confinement.

## DUE PROCESS RIGHT TO FAIR NOTICE OF ALLEGED VIOLATION

In his first issue, Delarosa argues that the motion to revoke failed to fairly inform him of the violations against which he was required to defend because the motion simply alleged that he committed the offenses of aggravating kidnapping and sexual assault without identifying the alleged victims or describing the manner and means by which the offenses were committed.  But Delarosa never informed the trial court that the allegations in the State's motion were constitutionally infirm because they failed to provide him with fair notice.  By failing to raise his complaint at trial, Delarosa forfeited appellate review of it.  *Labelle v. State*, 692 S.W.2d 102, 105-06 n.2 (Tex.Crim.App. 1985)(complaints regarding the sufficiency of the allegations in a motion to revoke are waived if not raised at trial).

---

[1] The witness chose to use the name Elizabeth as a pseudonym.

Delarosa concedes that he did not object at trial, but contends that "[he] should not be held to have waived his complaint that the allegations against him were wholly deficient" because the motion to revoke was not read to him in open court and he did not waive its reading. In support of his contention that he did not waive his complaint on appeal because the motion was not read in open court, Delarosa cites *Ex Parte Doan*, 369 S.W.3d 205 (Tex.Crim.App. 2012), and Justice Dauphinot's dissent in *Cherry v. State*, 215 S.W.3d 917 (Tex.App.--Forth Worth 2007, pet. ref'd). But these cases, whether standing alone or in conjunction, do not support such a proposition.

In *Ex Parte Doan*, the Texas Court of Criminal Appeals reexamined the nature of revocation hearings and concluded that they are not administrative proceedings, but rather formal, judicial proceedings "to be governed by the rules established to govern judicial proceedings." 369 S.W.3d at 212. Although the court reached this conclusion, it never suggested—much less held—that a defendant preserves his complaint regarding the sufficiency of the allegations in a motion to revoke if he does not object at trial but the motion is not read in open court. In fact, the court observed that defendants in revocation hearings do not enjoy the same panoply of procedural rights as defendants in criminal trials. *Id.* at 208.

In *Cherry v. State*, the issue was whether the State proved that the appellant was the same individual named in the judgment for possession of marijuana under two ounces and originally placed on community supervision. 215 S.W.3d at 918. The majority concluded the State had met its burden, but Justice Dauphinot disagreed. *Id.* at 920. In arguing that there was nothing in the record from which the trial court could legitimately infer that appellant was that person, Justice Dauphinot noted that "No one read the motion to revoke on the record, and no one waived reading the motion." *Cherry*, 215 S.W.3d at 920. Justice Dauphinot, like the majority in *Ex Parte Doan*,

3

never suggested that a defendant preserves his complaint regarding the sufficiency of the allegations in a motion to revoke if he does not object at trial but the motion is not read in open court.

In sum, *Ex Parte Doan* and Justice Dauphinot's dissent in *Cherry v. State* cannot be read to abrogate the requirement that complaints regarding the sufficiency of the allegations in a motion to revoke must be raised at trial for review on appeal.

Delarosa's first issue is overruled.

## INSUFFICIENT EVIDENCE

In his remaining two issues, Delarosa claims that the trial court erred in revoking his community supervision because the State failed to establish that he violated the conditions of community supervision by committing the offenses of aggravated kidnapping and sexual assault.

### 1. Standard of Review

We review a trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex.Crim.App. 2006). In so doing, we view the evidence in the light most favorable to the trial court's order. *Moore v. State*, 11 S.W.3d 495, 498 (Tex.App.--Houston [14th Dist.] 2000, no pet.). In a revocation proceeding, the trial court is the sole trier of facts, the judge of the credibility of the witnesses, and the arbiter of the weight to be given to the testimony. *Trevino v. State*, 218 S.W.3d 234, 240 (Tex.App.--Houston [14th Dist.] 2007, no pet.).

The State has the burden to show by a preponderance of the evidence that the defendant committed a violation of the conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex.Crim.App. 1993). The State meets it burden of proof when the greater weight of

4

the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *Rickels*, 202 S.W.3d at 763-64. When the State fails to meet its burden of proof, the trial court abuses its discretion in revoking community supervision. *Walkovak v. State*, 576 S.W.2d 643, 644-45 (Tex.Crim.App. 1979).

## 2. Aggravated Kidnapping

Delarosa contends in his second issue that the State failed to establish he kidnapped Elizabeth because there was no evidence he abducted her. We disagree.

### *Applicable Law*

Section 20.04(a) of the Texas Penal Code defines the offense of aggravated kidnapping in relevant part as:

(a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:

.       .       .

(3) facilitate the commission of a felony . . .;

(4) inflict bodily injury on [her] or violate or abuse [her] sexually;

(5) terrorize [her] or a third person . . . .

TEX.PEN.CODE ANN. § 20.04(a)(West 2011). The relevant definition of "abduct" is "to restrain a person with intent to prevent [her] liberation by secreting or holding [her] in a place where [she] is not likely to be found . . . ." TEX.PEN.CODE ANN. § 20.01(2)(A). To "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." TEX.PEN.CODE ANN. § 20.01(1). Finally, restraint is "without consent" when it is accomplished by "force, intimidation, or deception . . . ." TEX.PEN.CODE ANN. § 20.01(1)(A).

5

## *Discussion*

The State proved, by a preponderance of the evidence, that Delarosa abducted Elizabeth. Delarosa contends there is no evidence that Elizabeth was secreted or held in a place where she was unlikely to be found because "he took her five blocks away from where she was, pulled her out of the truck and stepped on her head." But Delarosa is mistaken.

The offense of kidnapping does not require that the defendant restrain the victim for any particular period of time, or that the victim be moved any particular distance. *Santellan v. State*, 939 S.W.2d 155, 163 (Tex.Crim.App. 1997); *Brimage v. State*, 918 S.W.2d 466, 475 (Tex.Crim.App. 1994)(moving victim from room to room while attempting to kill her was sufficient to prove restraint). Nor does the requirement of "substantial interference with the victim's liberty" in Section 20.01(1) mandate any quantitative amount of interference. *Brimage*, 918 S.W.2d at 490. Moreover, the requirement of "secreting" or "holding the victim in a place where she is not likely to be found," which Delarosa challenges, is part of the *mens rea* or culpable mental state of the offense; the *actus reus* of the offense is the "restraint." *Id.* at 475-76. Once restraint is established, the offense of kidnapping is complete when the actor evidences a specific intent to prevent liberation. *Id.*; *Megas v. State*, 68 S.W.3d 234, 240 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd).

When viewed in the light most favorable to the trial court's ruling, Elizabeth's testimony supports a finding that Delarosa substantially interfered with her liberty without her consent by dragging her into his truck, driving five blocks, and, for the duration of the drive, preventing her from leaving by banging her head against the window.

Delarosa's second issue is overruled.

### 3. Sexual Assault

In his third and final issue, Delarosa argues that the State failed to establish he sexually assaulted Elizabeth because there was no evidence he penetrated Elizabeth's vagina without her consent by the use of physical force or violence.   We disagree.

### *Applicable Law*

A person commits the offense of sexual assault if he intentionally or knowingly causes the penetration of the complainant's sexual organ without her consent by compelling her to submit or participate by the use of physical force or violence.   *See* TEX.PEN.CODE ANN. § 22.011(a)(1)(A), (b)(1)(West 2011).

### *Discussion*

The State proved, by a preponderance of the evidence, that Delarosa penetrated Elizabeth's vagina without her consent by compelling her to submit or participate by the use of physical force or violence.

Delarosa first asserts that there was no evidence "that when [he] shoved his fingers in [Elizabeth] to see if she was having sex that [he did so] without her consent."   Delarosa's assertion is belied by the evidence.   After Elizabeth testified to what she experienced, including Delarosa's penetration of her vagina with his fingers, she was asked by the prosecutor whether Delarosa had permission to do "[a]nything that we have just talked about."   Elizabeth responded, "No."   When viewed in the light most favorable to the trial court's ruling, Elizabeth's testimony supports a finding that Delarosa penetrated her vagina without her consent.

Delarosa next contends that there was no evidence "that [he] compelled Elizabeth to submit by violence or physical force."   The evidence establishes otherwise, however.   Elizabeth

7

testified that Delarosa threw her to the ground and was stepping on her head when he penetrated her vagina with his fingers. When viewed in the light most favorable to the trial court's ruling, Elizabeth's testimony supports a finding that Delarosa penetrated her vagina by compelling her to submit or participate by the use of physical force or violence.

Delarosa also maintains that there was no evidence that he penetrated Elizabeth's vagina because her "testimony [did] not clearly indicate that [he] penetrated [her] vagina," but rather implied it. He is mistaken. Elizabeth testified as follows in recounting how Delarosa sexually assaulted her:

> [ELIZABETH]: He shoved his finger in me to see if I was having sex.
>
> [PROSECUTOR]: With who?
>
> [ELIZABETH]: Brentley.
>
> [PROSECUTOR]: Okay. And you have to say where he put his hands, where he put his fingers. Where did he do this?
>
> [ELIZABETH]: My vagina.

When viewed in the light most favorable to the trial court's ruling, Elizabeth's testimony supports a finding that Delarosa penetrated her vagina with his fingers.

Delarosa's third and final issue is overruled.

## CONCLUSION

Having overruled all three of Delarosa's issues, we affirm the trial court's judgment.


September 18, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

8