**Opinion issued December 22, 2020**



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

## NO. 01-18-01074-CR

———————————————

**ANDRES TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 337th District Court
Harris County, Texas
Trial Court Case No. 1538219

# O P I N I O N

Appellant, Andres Torres, was indicted for the first-degree felony offense of aggravated robbery. After Torres pleaded guilty to the charged offense, the trial court deferred adjudication and placed him on community supervision for ten years. The State subsequently filed a motion to adjudicate Torres's guilt. Following a hearing,

the trial court revoked Torres's community supervision, adjudicated him guilty, and assessed his punishment at twenty years' confinement. On appeal, Torres contends that (1) the trial court committed constitutional error when it admitted a violation report containing hearsay and related testimony over defense counsel's objections, and (2) the trial court abused its discretion when it revoked his community supervision because the State offered no evidence, other than the hearsay from the violation report, that he violated any condition of his deferred adjudication. Because we conclude that the evidence supporting revocation of Torres's community supervision was insufficient for the trial court to adequately exercise its discretion, we reverse and remand for a new hearing.

## Background

On August 26, 2016, a grand jury indicted Torres—who was seventeen-year-old at the time of his crime—as an adult for the felony offense of aggravated robbery. He pleaded guilty and, on June 30, 2017, the trial court placed him on deferred adjudication community supervision for a period of ten years following 120 days' confinement and at least six months' shock treatment in a facility for offenders with substance abuse problems, the Substance Abuse Felony Punishment Facility (SAFPF).

The terms of Torres's community supervision required, among other conditions, that he participate in the SAFPF "for a term of not less than six (6) months or more than one (1) year" and to

> comply with all rules, regulations, and treatment programs and upon release [from the SAFPF, Torres] is required to participate in a drug or alcohol abuse continuum of care treatment plan as developed by the Texas Commission on Alcohol and Drug Abuse (TCADA), abiding by all rules and regulations of said treatment plan until discharged by the Court.

The terms and conditions also admonished Torres that "failure to abide by these Conditions of Community Supervision may result in the revocation of Community Supervision or an adjudication of guilt." Torres entered the SAFPF on November 15, 2017.

On May 1, 2018, the trial court signed an order—its "Order Releasing From Substance Abuse Felony Punishment Facility"—stating that it had been notified by TDCJ authorities that Torres was successfully completing the treatment program and setting his tentative discharge date as June 7, 2018. The order further stated that Torres would then be transferred to Abundance Living/Houston to participate in the continuum-of-care program.

Despite this May 1, 2018 order indicating that he had nearly completed the SAFPF program, Torres was subsequently recommended for removal from the program on May 30, 2018. On June 26, 2018, the State filed a motion to adjudicate guilt, alleging that Torres violated the terms and conditions of community

3

supervision by "[f]ailing to complete the Substance Abuse Felony Punishment Facility (SAFPF)."

The "SAFPF Progress and Conduct Report," submitted to the court on June 29, 2018—one month after he was recommended for removal and included in the clerk's record[1]—stated that since he had been recommended for removal from the program on May 30, 2018, Torres had been participating in groups and classes appropriately, had maintained a respectful attitude, had not received any sanctions, and had not had any disciplinary problems. The counselor commented that if he had "put forth as much effort prior to the recommendation for Behavioral Removal, he would have successfully completed the program."

The trial court held a hearing on the State's motion to adjudicate on November 26, 2018. The State called two witnesses at this hearing. Tankia Moore testified that she maintained the probation records for the court in which Torres was convicted in the regular course of business and that the records before the court were Torres's records, but she had never met Torres and did not have personal knowledge of the contents of Torres's file.

The State's second witness, Tony Dawson, the Harris County SAFPF coordinator, testified that Torres was unsuccessfully discharged from the SAFPF and

---

[1]     This document was not offered or admitted into evidence as an exhibit at the revocation hearing.

4

that he had prepared Torres's discharge report based on information conveyed to him during a "treatment team meeting" with prison personnel over the telephone. He testified that a discharge from the SAFPF typically occurs when an inmate has had several incidents or a serious incident such an one resulting in an injury.

The State introduced the report prepared by Dawson in anticipation of the adjudication hearing based on the information supplied to him by SAFPF personnel —a two-page form entitled "Violation Report/Court Action"—as Exhibit 4. The report contained no specific accounts of Torres's alleged violations of the conditions of his community supervision, and there were no incident reports or other documentation supporting the report. Dawson admitted at the hearing that he had no personal knowledge of any of the violations, nor did he know the particular source of any of the alleged violations that were utilized by the SAFPF to discharge him from the program. The Report stated that Torres had been diagnosed with ADHD "and was receiving mental health treatment for the condition." It listed no "Law Violations," and, with respect to his "Reporting History," it stated only that Torres was placed in the SAFPF program as a condition of his community supervision, and that, upon arriving at the facility, he "received numerous rules violations and was unsuccessfully discharged on 06/04/2018 as a result." Under "Treatment Issues," the Report stated summarily that Torres was discharged "for behaviors like refusing to conform to rules and regulations, using racial slurs, profanity towards staff, and

5

masturbating at a bathroom sink."[2] The Report also stated that Torres, "due to being in [the] SAFPF," had not been able to submit an educational skill level or provide proof of a high school diploma, GED, or participation in a GED program. He had not paid court fees assessed against him because they were not yet due.

Under "Status/Comments and Recommendations," the Report stated that Torres's case was referred to the court due to his unsuccessful discharge from the SAFPF, and it left court action to the discretion of the trial court. The Report stated, "It appears that [Torres] was given several opportunities to follow program rules . . . but failed to abide by them until his ultimate discharge." Thus, "[b]ased off of the information gathered by this CSO, and the behaviors exhibited, it would appear that [Torres] does not realize the possible serious consequences and may be in need of a clinical assessment to determine if he needs to be diagnosed with a mental illness or to determine if [he] needs medication." There is no indication that any assessment of Torres's mental health or need for medication was made in response to this comment in the five months between his discharge from the SAFPF program and his adjudication hearing. The Report was signed by Dawson and Supervisor Elisa Hughes, who did not testify at the revocation hearing.

---

[2] When the State asked Dawson why Torres was unsuccessfully discharged from the SAFPF, Dawson replied, "Because of the rule violations."

6

When the State introduced this exhibit, Torres objected to the Report as hearsay and as a violation of his rights of confrontation and cross-examination unless Dawson could demonstrate personal familiarity with the facts on which the report was based. He further argued that the rights to confrontation and cross-examination were implicated because his liberty interest was at stake. In response, the State argued that the business records exception to hearsay applied because Dawson reviewed the prison records to generate his report. The State also argued that *Crawford*[3] did not apply to the adjudication hearing. The trial court admitted State's Exhibit 4, and it granted Torres a running objection.

When asked how Torres performed in the SAFPF, Dawson testified that "he had a numerous amount of behavioral sanctions" such as refusing to conform to rules and regulations, using racial slurs, profanity towards staff, and masturbating at a bathroom sink. Dawson testified that he discharged Torres due to his rule violations. Dawson reiterated, however, that he did not have personal knowledge of the specific violations that led to Torres's discharge. Dawson admitted that he did not know who

---

[3] *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* holds that admission of a non-testifying declarant's hearsay statement—even when the trial court had determined that the statement was admissible under a hearsay exception—may nevertheless violate the Sixth Amendment right of confrontation if the statement was testimonial and the defendant did not have a prior opportunity to cross-examine the witness. *Id.* at 63–68; *see also* U.S. CONST. amend. VI (providing that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him").

7

made the allegations contained in the report, that it could have been a staff member or a fellow inmate, and that he could not personally assess the veracity or credibility of any of the allegations made against Torres.

Torres testified that he entered the SAFPF program on November 16, 2017, and that he was scheduled to be discharged on June 7, 2018. He stated that, while in the program, he had obtained his GED and had also been certified in construction with an OSHA license; he had completed 108 hours of a "change class"; he had completed an 18-hour drug course; he had completed his grief class; and he was "the commencement leader and an education tutor" in his community.

Torres testified that inmates break up "into little clicks [sic] against the people they don't like," and that the complaints against him came from other inmates. He stated that the inmates hold each other accountable, and, if someone writes an inmate up and has another inmate witness it, the complaint automatically goes down into that inmate's log, and he is held accountable. He testified that that was what had happened to him. Torres denied that the allegations contained in Dawson's report were true. Specifically, he denied using profanity toward a staff member. He admitted to falling asleep in class on December 12, 2017, and that doing so was contrary to the rules of the SAFPF program. He testified that he was never disrespectful to any of his teachers in the SAFPF program.

Torres testified that he believed he had passed all his classes and graduated from the program. He further stated that, since his discharge from the SAFPF program, he had been in the Harris County Jail for five months without incident.

Torres also testified that he had sincerely tried and wanted to stay on deferred adjudication because he had one-year-old twin daughters to whom he was "trying to get home" and little brothers in CPS for whom he wanted "to get [him]self together"; his mother had "lost her mind" after doing drugs and had been placed in a psychiatric ward and then transferred to prison; and he was "trying to get the little family I have left back on track." Torres testified that he had learned in the SAFPF to set boundaries with people and to stay away from temptations and that using drugs and criminal activity were "just a revolving cycle." At the time of the revocation hearing, Torres was twenty years old. He promised the trial court that he would be a productive member of society if stayed on probation.

At the conclusion of the hearing, the trial court granted the State's motion, found Torres guilty of the first-degree felony offense of aggravated robbery with a deadly weapon, and assessed his punishment at twenty years' confinement.

**Analysis**

In his first issue, Torres contends that the trial court committed constitutional error when it admitted Dawson's violation report and his related testimony over defense counsel's objections that its admission violated his right to confrontation

9

and cross-examination. To support his contention, he cites the Court of Criminal Appeals' opinion in *Ex Parte Doan*, holding that "[c]ommunity-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings." 369 S.W.3d 205, 212 (Tex. Crim. App. 2012).

Before the Court's decision in *Doan*, a number of courts of appeals had concluded that the Confrontation Clause did not apply to community supervision revocation proceedings. *See e.g.*, *Mauro v. State*, 235 S.W.3d 374, 375–76 (Tex. App.—Eastland 2007, pet. ref'd); *Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The State contends, however, that neither *Doan* nor any subsequent authority expressly considered the issue of whether the Confrontation Clause applies to community supervision revocation proceedings. Nor has the Court of Criminal Appeals overruled any of those pre-2012 intermediate appellate court decisions holding that the Confrontation Clause does not apply in revocation proceedings, and several courts of appeals have determined post-*Doan* that the Confrontation Clause does not apply during community supervision revocation proceedings. *See Sabella v. State*, 578 S.W.3d 137, 142 (Tex. App.—Texarkana 2019, no pet.); *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd) ("By its own terms, the Confrontation Clause applies only to criminal prosecutions, and a probation revocation, whether it follows 'regular'

10

probation or deferred adjudication probation, is not a stage of criminal prosecutions."); *see also Corona v. State*, No. 14-17-00821-CR, 2019 WL 1768598, at *2–3 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op., not designated for publication) ("A community supervision revocation hearing is not part of a criminal prosecution.").

Thus, the question of whether the Confrontation Clause applies in this context remains unsettled. In unpublished memorandum opinions, two courts—including this one—have assumed without deciding that revocation hearings are criminal proceedings for purposes of the Confrontation Clause. *See Blackman v. State*, No. 01-1-00525-CR, 2014 WL 50804, at *3 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, pet. ref'd) ("We acknowledge that *Doan* did not decide the issue of whether a defendant has a right to confront witnesses during a community supervision revocation, and no case since *Doan* has revisited that issue. However, for purposes of this opinion, we will assume without deciding, that a defendant can raise a Confrontation Clause objection in a community-supervision revocation proceeding."); *Bacilio v. State*, No. 08-14-00096-CR, 2016 WL 1253420, at *3 (Tex. App.—El Paso Mar. 30, 2016, pet. ref'd) (mem. op., not designated for publication).

The State further asserts that Torres failed to preserve his specific complaints regarding the hearsay contained within the Report, and we are mindful that a trial court has broad discretion in determining the admissibility of evidence. *See Gonzalez*

*v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (explaining that appellate courts review rulings admitting evidence under abuse-of-discretion standard). Thus, in deciding whether any error occurred, the appellant must establish the ruling that is the subject of his complaint on appeal was one that "lies outside the zone of reasonable disagreement." *See id.*

Given the unsettled nature of the law regarding the right to confrontation during revocation and adjudication hearings and the broad discretion granted to the trial court in determining the admissibility of Dawson's discharge report, we turn, instead, to Torres's second issue regarding the sufficiency of the evidence supporting the trial court's revocation of his community supervision, adjudication of guilt, and assessment of punishment. We conclude that, even assuming that the trial court did not abuse its discretion in admitting the report, the evidence was insufficient for the trial court to properly exercise its discretion in revoking Torres's deferred adjudication community supervision.[4]

---

[4] Because we conclude that the trial court lacked sufficient evidence upon which it could exercise its discretion and, thus, remand for a new hearing is necessary, and because the resolution of his first issue would not afford him any greater relief, we need not address his first issue. *See* TEX. R. APP. P. 47.1; *Love v. State*, 600 S.W.3d 460, 485 (Tex. App.—Fort Worth 2020, pet. ref'd) (holding that, because appellant's remaining issues, even if sustained, could not afford him any greater relief, they need not be addressed); *Alvarez v. State*, 570 S.W.3d 792, 795 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (stating same).

The State must prove by a preponderance of the evidence that the defendant violated a term of his community supervision to justify adjudication, and we review the evidence's sufficiency under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). Only one sufficient ground is necessary to support a trial court's decision to revoke community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see also Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) (stating proof of single violation will support revocation).

In *Leonard v. State*, the Court of Criminal Appeals expounded on the abuse-of-discretion standard of review as applied to a trial court's adjudication of guilt following revocation of deferred adjudication community supervision. 385 S.W.3d 570, 575–77 (Tex. Crim. App. 2012). In *Leonard*, the defendant was ordered to complete a treatment program as a condition of his community supervision, and he was adjudicated guilty because he failed to complete that program.[5] *Id.* at 576. The Court of Criminal Appeals considered whether the reasons behind the appellant's discharge from the program were relevant to determining whether the trial court abused its discretion:

> In a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of

---

[5] The appellant in *Leonard v. State* was ordered to complete a sex-offender treatment program. 385 S.W.3d 570, 572 (Tex. Crim. App. 2012).

his community supervision. Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court. . . ." On appeal from a trial court's decision to revoke, therefore, appellate courts review the record only to ensure that the trial court did not abuse its discretion.

*Id.* (internal citations omitted). The *Leonard* court went on to note that "it is not obvious how an abuse-of-discretion standard applies in this case," observing that

[t]he trial court ordered the appellant to "[a]ttend and participate fully in and successfully complete" a program. The evidence at the adjudication hearing showed that the appellant did "[a]ttend" and "participate fully" in the program, both of which were within his power to do. The appellant did not have full control over his ability to "successfully complete" the program, however; he was discharged because the therapist came to believe that he was being dishonest. Thus it was the therapist's discretion that caused the appellant to be in violation of a term of his community supervision.

*Id.* at 576–77.

The court thus held that an "ordinary abuse-of-discretion review"—one requiring only evidence that "[d]ischarge caused the appellant to be in violation"—would be "inadequate." *Id.* at 577. It held, instead:

Revocation involves the loss of liberty and therefore implicates due process. "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation case is whether the [defendant] was afforded due process of law." It would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision. Yet, by an ordinary abuse-of-discretion review, such a revocation would be sustained.

14

> What has happened here is that the trial court, through a condition of the appellant's community supervision, made the appellant's compliance with the terms of his community supervision subject to the discretion of a third party. In such a case, to determine whether the trial court abused its discretion we must also examine the third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision.

*Id.* (internal citations omitted).

We conclude that the abuse-of-discretion standard articulated in *Leonard* is applicable here. Therefore, in reviewing whether the trial court abused its discretion we must also examine the SAFPF's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision. *See id.*

Torres's circumstances are factually similar to the appellant in *Leonard* in several key ways. Here, as in *Leonard*, the trial court ordered Torres to treatment through a third-party program and to comply with the program's rules. The evidence at Torres's adjudication hearing showed that he was successfully completing the SAFPF program as of May 1, 2018, when the trial court signed its "Order Releasing From Substance Abuse Felony Punishment Facility." However, later that same month, he was discharged unsuccessfully from the program.

The State presented insufficient evidence regarding the reasons for Torres's discharge from the program. The Report contains only conclusory statements that Torres had violated "rules" of the program and summarily states that Torres was

15

discharged "for behaviors like refusing to conform to rules and regulations, using racial slurs, profanity towards staff, and masturbating at a bathroom sink." The Report provides no further detail, elaboration, or supporting facts. Dawson admitted that he did not have any personal knowledge regarding Torres's behavior or the incidents referenced in his report. He did not know anything about the basis of these complaints, and he acknowledged that they could have been made by Torres's fellow inmates. The State failed to include in the record any incident reports or other information that would provide the trial court with details behind the conclusory allegations presented against Torres. Nor did the State present any evidence regarding the source of the allegations against Torres.

The conclusory nature of the report stands in stark contrast to the other record evidence. On May 1, 2018, the trial court signed an order acknowledging that Torres was successfully completing the program and was set to be discharged a little more than a month later, on June 7, 2018. Before that could occur, however, he was recommended for removal from the program on May 30, 2018. Nevertheless, the following month, the SAFPF filed a "SAFPF Progress and Conduct Report" with the trial court. This progress report stated that since he had been recommended for removal from the program on May 30, 2018, Torres had been participating in groups and classes appropriately, had maintained a respectful attitude, had not received any sanctions, and had not had any disciplinary problems. The counselor commented

16

that if he had "put forth as much effort prior to the recommendation for Behavioral Removal, Torres would have successfully completed the program." Torres himself testified that he believed he had completed all that the program had required of him and that the complaints against him had been fabricated by fellow inmates who had formed a clique. Dawson acknowledged that the reports of bad behavior and rule violations could have come from other inmates. And the evidence suggests that Torres had completed at least some portion of the program: Torres testified that, while in the program, he had obtained his GED and had also been certified in construction with an OSHA license; he had completed 108 hours of a "change class"; he had completed an 18-hour drug course; he had completed his grief class; and he was "the commencement leader and an education tutor" in his community.

Given the nature of the evidence, we conclude that the State did not present sufficient evidence for the trial court to properly exercise its discretion in this case. The Report itself is evidence only of the fact that Torres was discharged unsuccessfully from the program. The State asserted at trial that it only had to prove that Torres had violated a term of his community supervision by being unsuccessfully discharged from the SAFPF. But, as *Leonard* points out, once Torres was assessed community supervision in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court." 385 S.W.3d at 576. This is still true when, as here, "through a condition of the appellant's community

supervision," the trial court made "compliance with the terms of his community supervision subject to the discretion of a third party." *Id.* at 577.

Here, as in *Leonard*, "[t]he central issue to be determined . . . is whether [Torres] was afforded due process of law" in connection with the trial court's exercise of its discretion. *Id.* at 576. And we conclude that it "would surely offend due process" if Torres "were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision." *See id.* at 577. Because the record does not contain a sufficient explanation of the reasons or incidents behind Torres discharge, the trial court could not have determined whether the SAFPF's reasons were appropriate, or whether, as Torres himself asserted, they were based solely on unfounded allegations from fellow inmates. *Leonard* requires that the trial court consider the soundness of the SAFPF's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision. *See id.* Here, the trial court failed to do so when it exercised its discretion to revoke Torres's community supervision, adjudicate his guilt, and assess his punishment at 20 years' confinement based solely on conclusory statements passed from the SAFPF program through a witness who had no personal knowledge of the circumstances leading to Torres's unsuccessful discharge from the program.

Accordingly, we sustain Torres's second issue on appeal.

## Conclusion

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

Justice Keyes, concurring.