**Opinion filed July 28, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00217-CR

_____

## BRYAN MEZA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**

**Ector County, Texas**

**Trial Court Cause No. D-17-1786-CR**

## M E M O R A N D U M   O P I N I O N

Bryan Meza originally pleaded guilty to the offense of manufacture or delivery of a controlled substance (cocaine) of four grams or more but less than 200 grams, a first-degree felony. The trial court deferred a finding of guilt, placed Appellant on community supervision for eight years, and assessed a fine of $5,000. The State subsequently filed a motion to revoke Appellant's community supervision and proceed with an adjudication of guilt. The trial court held a hearing on the

State's motion to adjudicate wherein it found three of the State's allegations to be true. The trial court adjudicated Appellant guilty of the charged offense and assessed his punishment at confinement for a term of fifty years in the Institutional Division of the Texas Department of Criminal Justice.

In a single issue, Appellant asserts that the trial court abused its discretion by revoking his deferred adjudication community supervision and adjudicating his guilt because the evidence of his violations was insufficient. We affirm.

*Background Facts*

The original charge of delivery of a controlled substance arose from Appellant's act of paying someone to plant cocaine in the wallet and car of his girlfriend and the mother of his child, Cristina Aldaz. With the hope that Aldaz would be stopped, searched, and subsequently arrested, Appellant had his mother call the Odessa Police Department to report that Aldaz looked suspicious. Appellant's efforts were successful because Odessa police officers arrested Aldaz. She spent a month and a half in jail. Appellant subsequently confessed to planting the cocaine on Aldaz. He pleaded guilty to the first-degree felony offense of delivery of a controlled substance.

Meza and Aldaz later reconciled. The two moved in together in a house that Appellant built in 2019. During this period, Appellant obeyed all the terms and conditions of his community supervision. However, in the early morning hours of April 26, 2020, Aldaz called 9-1-1 alleging that Appellant had assaulted her while he was drunk at a party held at their home. The alleged assault occurred after a verbal altercation between the couple. After the altercation, Appellant left the party to stay with his brother in Gardendale for the night, twenty miles away.

Corporal Thor Prosise of the Odessa Police Department arrived at Appellant's home at 2:10 a.m., approximately ten minutes after Aldaz spoke with the 9-1-1 operator. Corporal Prosise wore a body camera that recorded his encounters at the

2

scene. The recording from the body camera indicated that Appellant was not at the house that night when officers arrived. The recording also indicated that Appellant refused to return to the home to answer questions from the police. Appellant initially spoke to Corporal Prosise through a doorbell camera. Corporal Prosise also spoke to Appellant over the phone.

The State alleged four violations of Appellant's community supervision conditions, including committing two assaults, drinking alcohol, and being absent from home after curfew. Appellant, Aldaz, and Corporal Prosise testified at the hearing on the motion to adjudicate. At the end of the hearing, the trial court found three of the allegations to be true.

*Analysis*

In his sole issue, Appellant contends that the trial court abused its discretion in revoking his deferred adjudication community supervision and adjudicating his guilt because the evidence was insufficient. Among other things, Appellant contends that the police investigation of the April 26 incident was flawed and improper. He also asserts that Aldaz's testimony was filled with "lies, omissions, and contradictions" to the point that no rational trier of fact could have believed her testimony.

In order "to revoke probation supervision, (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by a preponderance of the evidence." *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013) (citing *Leonard v. State*, 385 S.W.3d 570, 576–77 (Tex. Crim. App. 2012); *Ex parte Doan*, 369 S.W.3d 205, 210 (Tex. Crim. App. 2012)). "In the probation-revocation context, 'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Id.* at 865 (quoting *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006)). "For probation-

3

revocation cases . . . the appellate standard of review [is] whether the trial court abused its discretion." *Id.* (citing *Rickels*, 202 S.W.3d at 763). "[T]he trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Id.* (citing *Davila v. State*, 547 S.W.2d 606, 609 (Tex. Crim. App. 1977)). We review the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

The State alleged the following four violations:

1.) On or about April 26, 2020, **Bryan Meza**, did commit an offense against the laws of this State, to wit: Assault, against Cristina Aldaz. This is a violation of Rule (a) of the Rules of Community Supervision.

2.) On or about April 26, 2020, **Bryan Meza**, did commit an offense against the laws of this State, to wit: Assault, against Ashley Aldaz.[1] This is a violation of Rule (a) of the Rules of Community Supervision.

3.) On or about April 26, 2020, **Bryan Meza** failed to abstain from the use of intoxicating beverages as ordered by the Court. This is a violation of Rule (b) of the Rules of Community Supervision.

4.) On or about April 25, 2020, **Bryan Meza** failed to be at home between 10:00PM and 6:30AM and remain there unless his work requires him to be out later, as ordered by the Court. This is a violation of Rule (k) of the Rules of Community Supervision.

The trial court found allegations nos. one, three, and four to be true and allegation no. two not true.

Aldaz testified that her relationship with Appellant was "abusive, physically and mentally." She elaborated that after she had their daughter, Appellant would get drunk and try to strangle her. As mentioned previously, Aldaz moved in with Appellant at his house. She testified that while living with Appellant, she observed

---

[1]Ashley Aldaz is Cristina Aldaz's sister. Unless otherwise noted, all references in this opinion to "Aldaz" are to Cristina Aldaz.

4

him breaking the rules of community supervision, including using marihuana and drinking alcoholic beverages.

With respect to April 25, 2020, Aldaz testified that she observed Appellant drinking beer that day. She stated that Appellant was very aggressive that day and that he bit her cheek at approximately 5:00 p.m. Later, some of her friends and her sister came to the house to eat, arriving at 7:00 p.m. Aldaz testified that a party occurred lasting until midnight or 1:00 a.m. Everyone was drinking during the party, including Appellant who drank whiskey.

Aldaz testified that Appellant began telling her "bad things" and calling her a "whore" in front of her friends and her sister. She stood up and told him to stop, at which point, according to Aldaz's testimony, he pushed her against a chair and caused her to fall to the floor. Aldaz testified that Appellant threw her sister on the floor when she confronted Appellant. After Aldaz got up, Appellant began to "strangle" her by placing his hands on her neck, causing her to have difficulty breathing. After Aldaz's friends pulled Appellant off of Aldaz, she asked them to call the police. Appellant left the home at this point.

Aldaz denied that either she or her friends physically assaulted Appellant or caused him any injuries. However, she acknowledged that photos of Appellant depicted scratches on his face, neck, chest, and back. Aldaz also testified to making a comment recorded by the doorbell camera to the effect that "because of those scratches, we might go to jail."

Aldaz's sister, Ashley Aldaz, testified that Appellant was "being ugly with [Aldaz] . . . mentally." Ashley stated that Aldaz tried to get Appellant to go into the house, at which point he got upset. Ashley testified as follows:

> She got up to try to calm him down, and what he did, he pushed her. And then we all got up, and when I got up myself he pushed me to the floor. And then that's when my sister got up from the floor and that's when he grabbed her by the neck.

5

She further testified that Appellant grabbed Aldaz's neck "with strength" and that Aldaz was not able to breathe.

Appellant's brother, Christopher Meza testified that Appellant came to his house in Gardendale sometime around midnight or 1:00 a.m. He said that Appellant's shirt was full of blood and that he had scratches on his forehead. Christopher testified that Appellant told him that he was "jumped" by three girls and one guy.

Appellant testified that on April 25, he returned home from work around 11:30 p.m. He discovered Aldaz and her friends having a party in the garage. Because of the rules of his community supervision, he confronted Aldaz about having alcohol in their home. He testified that everyone else was drinking but that Aldaz appeared to be intoxicated.

Appellant stated that he went inside to take a shower, and then he went back outside to tell Aldaz that it was time for everyone to leave. He testified that Ashley began telling him that she wanted to do inappropriate things with his brother. Appellant was upset that she was saying inappropriate things in front of his young daughter. He said that Ashley then got aggressive toward him by pushing him. Appellant testified that as he was trying to walk away, Ashley scratched him and slapped his ear. He further testified that Aldaz began hitting him from the other side. Appellant testified that one of the males put him in a bear hug but that the male let Appellant go when Appellant said he was going to call the police. After he was released, Appellant walked to his pickup and left.

Appellant denied choking Aldaz. He opined that he "was being framed for everything." After initially trying to push his attackers away, Appellant testified that he just put his hands behind his back as the attack on him continued. Appellant acknowledged that leaving his home after curfew was a violation of his community supervision. However, he felt justified in doing so for his safety.

6

With respect to the original charge, Appellant testified that he could not remember who was the source of the drugs that were planted on Aldaz, or who was the person that planted it. When pressed on the matter, Appellant testified: "I don't think that has anything to do with what we are here for today." Appellant also denied remembering the financial details of the arrangement that he made with the person to plant the drugs.

Appellant directs his evidentiary challenge at the testimony of Corporal Prosise and Aldaz. We begin our analysis with Appellant's general contention that the police and the prosecutors failed to conduct a proper investigation of the alleged assault. Appellant asserts that the police and prosecutors failed to interview witnesses to the altercation between Appellant and Aldaz. But as noted by the Texarkana Court of Appeals, when conducting an evidentiary review, "[w]e do not review the sufficiency of the police investigation; we review the evidence presented at trial." *Quinonez v. State*, No. 06-07-00016-CR, 2007 WL 2608833, at *4 (Tex. App.—Texarkana Sept. 12, 2007, pet. ref'd) (mem. op., not designated for publication). "[W]e do not consider what evidence the State could have or even should have presented." *Id.* Furthermore, we do not speculate about the evidence that the State did not present. *McLemore v. State*, No. 05-15-00160-CR, 2015 WL 9591398, at *3 (Tex. App.—Dallas Dec. 31, 2015, no pet.) (mem. op., not designated for publication) (citing *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012)).

Appellant also asserts that Corporal Prosise's testimony was "incredibly misleading" when compared to the recordings from the doorbell camera and Corporal Prosise's body camera. Appellant also contends that Corporal Prosise mischaracterized Aldaz's demeanor, contrary to what is depicted in the 9-1-1 recording, the doorbell recording, and the body camera recording. To the extent that Corporal Prosise's testimony conflicted with the recordings, we presume that the

7

factfinder resolved the conflicts in favor of its decision, and we defer to that determination. *See Merritt*, 368 S.W.3d at 525–26 (citing *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).

Appellant also contends that Corporal Prosise was racially biased against Appellant based on Corporal Prosise's comments to Aldaz about Appellant. He also asserts that Corporal Prosise asked leading and suggestive questions to Aldaz to get the answers that he was seeking to get. These are matters that Appellant had the opportunity to ferret out during cross-examination. We will not disturb the trial court's resolutions of these contentions in favor of the State. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493.

With respect to Aldaz, Appellant contends that her testimony and statements "were so inconsistent that no reasonable fact finder could have found her testimony credible." Appellant also points to inconsistencies between Aldaz's testimony and what she reported to the 9-1-1 operator. Appellant further asserts that Aldaz was motivated to fabricate her allegations against Appellant in order to quickly resolve her status as an illegal immigrant. But much the same as with Corporal Prosise, the matters that Appellant alleges with respect to Aldaz involved his perceived inconsistencies in her testimony, a matter to which we defer to the trial court's resolution. *See Merritt*, 368 S.W.3d at 525–26 (citing *Jackson*, 443 U.S. at 326). Furthermore, we will not disturb the trial court's determination that Aldaz's account of the altercation was credible. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493.

The evidence in this case was disputed regarding the altercation and Appellant's violation of the terms of community supervision pertaining to curfew and drinking alcohol. Whether Appellant violated the terms of his community supervision boiled down to a swearing match between Aldaz and Appellant. Aldaz provided testimony that Appellant committed the three violations found to be true

8

by the trial court. The trial court obviously accepted Aldaz's account and rejected Appellant's version of the events. Because the trial court is the sole judge of the witnesses' credibility in a revocation hearing, it did not abuse its discretion by finding the three violations to be true, adjudicating Appellant's guilt, and revoking his community supervision. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court

JOHN M. BAILEY

CHIEF JUSTICE

July 28, 2022

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[2]

Trotter, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.