

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00002-CR
No. 02-21-00003-CR

_____

BEECHER MONTGOMERY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court Nos. 1591282D, 1627542D

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

This is an appeal from a hearing on the State's petition to proceed to adjudication at which Appellant Beecher Montgomery appeared via Zoom. Montgomery argues in two issues that his constitutional right to due process under the Fourteenth Amendment and his Sixth Amendment right to confront witnesses were violated when he was not allowed to be physically present in the same room with his attorney during the virtual hearing on the State's petition to proceed to adjudication. With regard to Montgomery's due process right to be physically present, he failed to bring forward a sufficient record to demonstrate how he was denied due process when the record shows that he appeared, participated in the trial, and testified on his own behalf. Further, the record does not support his claim that the virtual technology that was used actually impaired his ability to participate in the hearing and confer with his counsel. As to Montgomery's right to confront witnesses, we stand by our prior opinions in which we have held that the Confrontation Clause does not apply to a revocation proceeding because that is not a stage of a criminal prosecution. *See Flores v. State*, No. 02-21-00028-CR, 2022 WL 3097287, at \*8 (Tex. App.—Fort Worth Aug. 4, 2022, pet. filed) (mem. op., not designated for publication); *White v. State*, No. 02-21-00059-CR, 2022 WL 623450, at \*6–7 (Tex. App.—Fort Worth Mar. 3, 2022, no pet.) (mem. op., not designated for publication); *Pickins v. State*, No. 02-17-

00050-CR, 2018 WL 3468359, at *4 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication). Accordingly, we affirm.

## II. Background

In June 2020, Montgomery pleaded guilty to the offenses of evading arrest and theft and pleaded true to having been previously convicted of a felony. The trial court deferred a finding of guilt and placed Montgomery on deferred-adjudication community supervision for ten years. The terms of Montgomery's community supervision required that he "[c]ommit no offense against the laws of this State."

Two months later, the State filed a petition to proceed to adjudication alleging, among other things, that Montgomery had violated the terms and conditions of his community supervision by being arrested for the offenses of injury to a child, elderly person, or disabled person and possession of a controlled substance. The State later filed a first amended petition to proceed to adjudication alleging, among other things, that Montgomery had violated the terms and conditions of his community supervision by being arrested for the offense of injury to a child, elderly person, or disabled person and by admitting to using illegal drugs.[1]

In October 2020, Montgomery filed an "Objection to Virtual Proceeding" arguing that "such a hearing is[] (1) [n]ot specifically approved; (2) [v]iolates constitutional protections of effective assistance of counsel and confrontation;

---

[1]The first amended petition also alleged that Montgomery had committed the offense of violation of a protective order by contacting the victim on three dates via mail, but the State waived this allegation at the hearing on the petition.

(3) [v]iolates statutory protections of confrontation for [Montgomery] and the [v]ictim; and (4) [i]s contrary to the positions taken by the Tarrant County Criminal District Attorney in other cases."[2]  The State filed a response arguing that the Supreme Court's 26th Emergency Order and the Office of Court Administration's guidelines supported a virtual hearing.  The State in its response set forth the relevant guidelines showing that in-person proceedings were reserved for essential proceedings and stated that "[a] hearing on a motion to adjudicate, such as the one scheduled in the present case, is not an essential proceeding."

The hearing on the State's petition to proceed to adjudication took place in January 2021—ten months into the COVID-19 pandemic.  The record noted that "ALL PARTIES AND WITNESSES APPEARED VIA VIDEOCONFERENCE."  Montgomery appeared from jail via Zoom.  At the outset of the hearing, the trial court heard Montgomery's objection to holding a virtual proceeding and denied the motion.  After Montgomery pleaded "not true" to paragraphs one through four and paragraph six in the State's first amended petition to proceed to adjudication, the trial court then proceeded to hear testimony.

During the adjudication phase of the hearing, the State put on four witnesses, including Montgomery's mother (the victim of his new charge for injury to an elderly

---

[2]When he made this objection, Montgomery's trial counsel stated that he had meant to file the objection in both cases but had not filed it in the theft case, which was "an oversight" on his part.  The trial court allowed "whatever filings had been filed in either case to apply to both cases."  The State responded, "I'm fine with that, Judge."

person), Montgomery's community supervision officer, Montgomery's sister, and a police officer who was dispatched to the home after Montgomery injured his mother. All four witnesses identified Montgomery for the record during the proceeding because they could see him in one of the Zoom screens. Shortly after the State began questioning Montgomery's mother, the record reflects the following:

> [DEFENDANT]: [Defense counsel], something real quick. [Defense counsel], can I ask you something real quick?
>
> [DEFENSE COUNSEL]: Yeah, can you put us in a room, Judge?
>
> THE COURT: Hang on just a minute.
>
> (Defendant and counsel confer out of presence of Zoom)

At the conclusion of defense counsel's cross-examination of Montgomery's mother, the following transpired:

> [DEFENSE COUNSEL]: Judge, it's at this time that I always like to ask my client if he's got anything else he wants me to ask whatever witness. So can I have just a short breakout room to see if there's anything that Mr. Montgomery feels like I forgot?
>
> THE COURT: Hang on just a minute.
>
> [DEFENSE COUNSEL]: Okay.
>
> (Defendant and counsel confer out of presence of Zoom)
>
> [DEFENSE COUNSEL]: Okay. Judge, I just have a few more questions.
>
> THE COURT: Back on, so go ahead.

Later, before excusing Montgomery's sister, defense counsel again asked the trial court to put him and Montgomery into a "private room" away from the Zoom proceedings so that he could confer with his client, and the trial court agreed to do so. Similarly, before beginning his cross-examination of the police officer, defense counsel asked for a short break with his client, and the record notes, "Defendant and counsel confer out of presence of Zoom."

After the trial court denied the motion for instructed verdict, defense counsel asked to be put in a room to discuss the proceedings with Montgomery, and the trial court agreed to do so. Montgomery then took the stand to testify.

Although there were brief interruptions throughout the hearing when technical difficulties occurred, the trial court took measures to pause the proceedings and, when necessary, to reestablish the electronic connection with all participants and have the attorneys or witnesses repeat any questions or responses that were unable to be heard the first time that they were spoken.

After hearing the evidence, the trial court found the five remaining allegations in the State's first amended petition to proceed to adjudication to be true, as well as the repetition allegation for a prior felony conviction.

The sentencing portion of the proceeding then took place. After hearing testimony from the State's six witnesses and the defense's two witnesses, one of whom was Montgomery, the trial court sentenced Montgomery to twenty years'

confinement for each of the underlying offenses and ordered the sentences to run concurrently.

Montgomery filed a motion for new trial in each case, and the motions were overruled by operation of law. These appeals followed.

### III. Due Process Claim

In his first issue, Montgomery argues that he was denied due process under the Fourteenth Amendment when he was not allowed to be physically present at the hearing on the State's petition to proceed to adjudication. His true complaint, however, appears not to be the use of Zoom in general but that "there were several instances in which the virtual technology utilized [was] inadequate and therefore did not truly provide a vehicle in which Appellant could be *present* at this hearing and sentencing." Based on the record before us, we cannot say that Montgomery was denied his right to due process when he appeared, participated, and testified via Zoom at the hearing on the State's petition to proceed to adjudication and where the record does not support his claim that the virtual technology that was used actually impaired his ability to participate in the hearing and confer with his counsel.

It is an appellant's burden to present a record demonstrating reversible error. *See Newman v. State*, 331 S.W.3d 447, 450 (Tex. Crim. App. 2011); *see also Ortiz v. State*, 144 S.W.3d 225, 230 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (en banc) (holding that an appellant has a "burden of presenting a record to show error requiring reversal insofar as he is required to *develop* the record to show the nature and

7

source of an error and, in some cases, its prejudice to him"). As with other claims of error, when an appellant claims technology impaired his ability to participate and communicate with counsel, the record must establish proof of the allegation based on the inability to communicate with counsel as a result of utilizing remote videoconferencing. *See Broussard v. State*, No. 09-20-00259-CR, 2022 WL 2056388, at *7, *9 (Tex. App.—Beaumont June 8, 2022, no pet.) (mem. op., not designated for publication) (overruling appellant's issue—arguing that conducting his trial by remote electronic means denied him his "Sixth Amendment right to counsel, his right of confrontation, and his Fifth and Fourteen[th] Amendment rights to due process" by making him unable "to confer, be prepared for, and participate in the conduct of his trial"—because the record lacked any suggestion that the trial court denied any opportunity for him to participate in the proceedings or to interject or speak with his counsel); *In re K.G.*, No. 05-20-01053-CV, 2021 WL 688447, at *4 (Tex. App.—Dallas Feb. 23, 2021, pet. denied) (mem. op.) ("Nothing in the record shows appellant could not discuss the case with his attorney in private. We conclude appellant has failed to show the trial court erred by holding the hearing by remote video conference.").

Here, Montgomery does not point to any part of the record demonstrating that he was unable to participate in the hearing or converse with his attorney. Instead, as set forth above, the record demonstrates that Montgomery testified; that witnesses

could see him; that he could see and hear the witnesses;[3] and that on multiple occasions, he was able to speak to his attorney in a "private room" on the Zoom platform outside the hearing of the other participants.

Also, contrary to Montgomery's assertions, the record does not illustrate that the glitches affected his defense. As stated by a sister court, "They [the glitches] may have been frustrating, but frustration is the byword in these times of growing technology." *Cathey v. State*, No. 07-20-00235-CR, 2021 WL 1376961, at *2 (Tex. App.—Amarillo Apr. 12, 2021, no pet.) (mem. op., not designated for publication).

Though the record does not bear out his complaints about the use of technology, Montgomery advocates for an absolutist approach and argues that "[a]ll of these difficulties could have been eliminated by simply having the hearing in person

---

[3]At one point during the hearing when the trial court asked for the parties to give him a moment, the following conversation took place between Montgomery and his mother:

[MONTGOMERY]: You okay, mom?

THE WITNESS: I'm fine.

[MONTGOMERY]: I love you.

THE WITNESS: Me, too.

[THE PROSECUTOR]: I'm sorry, why is the defendant talking to the witness?

[DEFENSE COUNSEL]: Yeah.

[Montgomery], don't talk to your mom. They'll get mad at you.

[MONTGOMERY]: Oh, I'm sorry.

and affording Appellant his due process right to be present." But the lens through which we view due process complaints produces more than a black-and-white view. As the United States Supreme Court has explained, "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972). Furthermore,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976).

In considering the private interest affected, there is no doubt that a defendant, such as Montgomery, has a significant interest at stake in a hearing on the State's petition to proceed to adjudication. A finding of true as to just one of the allegations meant that Montgomery could face significant jail time. With regard to the risk of erroneous deprivation, as one court has stated, it

> is minimal, given the safeguards provided by a Zoom hearing in this case. The defendant's attendance helps assure that he has a fair and just hearing under due process "because he can consult with his lawyer, listen to the evidence, and assess the credibility of the witnesses (and the evidence) against him." Although generally not preferable, with today's video[]conferencing technology, a virtual hearing can approximate a live physical hearing in ways that it could not previously. The use of Zoom can effectively safeguard the defendant's right to be present by allowing him to listen to the evidence, adequately observe the witnesses who

testify at the hearing, and privately consult with his attorney at any time during the Zoom hearing.

*Vazquez Diaz v. Commonwealth*, 167 N.E.3d 822, 831–32 (Mass. 2021). As to additional or substitute procedural safeguards, the trial court paused the proceedings when glitches occurred and made sure that everyone could be seen and heard, including having attorneys and witnesses repeat questions and statements when necessary. With regard to the government interests in proceeding with a Zoom hearing rather than an in-person hearing, the State has a significant interest in protecting the public health by holding a virtual rather than in-person hearing. *See id.*; *Dies v. State*, 649 S.W.3d 273, 282 (Tex. App.—Dallas 2022, no pet. h.). Additionally, the State's ability to proceed on Zoom helped to alleviate the growing backlog of cases due to COVID-19. *See Vazquez Diaz*, 167 N.E.3d at 831–32.

After balancing the due process factors, it is clear that the State's interest in protecting the public health during the COVID-19 pandemic is significant, as is the State's interest in the timely disposition of cases. *See id.* Accordingly, we conclude that the virtual hearing on the State's petition to proceed to adjudication—though not seamless—was not so inadequate that Montgomery was not permitted to participate in the hearing on the State's petition to proceed to adjudication.[4]

---

[4]Due to a dearth of Texas case law on this issue, we note that other states that have dealt with this issue have held similarly. *See, e.g.*, *People v. Whitmore*, 295 Cal. Rptr. 3d 461, 469–71 (Cal. Ct. App. 2022) (holding that appellant's due process right to be physically present in the courtroom was not violated by requiring him to attend the hearing virtually); *In re R.L.*, No. 1-21-0419, 2021 WL 4521362, at *3 (Ill. App. Ct.

Having determined that Montgomery brought forward an insufficient record to show that he was denied due process as a result of his virtual participation in the hearing, we overrule Montgomery's first issue.

## IV. Confrontation Clause Issue

In his second issue, Montgomery argues that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court held a virtual hearing on the State's petition to adjudicate his guilt. Without citing the relevant prior decisions from this court, Montgomery points out that several courts of appeals have held that the Confrontation Clause does not apply to community supervision revocation proceedings but argues that such "holdings are contrary to a pronouncement by the Court of Criminal Appeals" in *Ex parte Doan*, 369 S.W.3d 205,

---

Oct. 4, 2021) (holding that trial court did not violate appellant's right to due process by hearing the case via videoconferencing); *Vazquez Diaz*, 167 N.E.3d at 833 (holding that no constitutional violation of the defendant's right to be present occurred when a Zoom hearing was held during the COVID-19 pandemic); *In re Hudson*, Nos. 354381, 355855, 356057, 2021 WL 3121376, at *4–5 (Mich. Ct. App. July 22, 2021) (not designated for publication) (holding that appellant failed to furnish the court with a record showing a due process violation and that his due process rights were not violated when he appeared by telephone during the COVID-19 pandemic because he was given the opportunity to be heard at a meaningful time and in a meaningful manner); *Chaparro v. State*, 497 P.3d 1187, 1191–92 (Nev. 2021) (holding that appellant's due process right to be physically present in the courtroom was not violated by conducting a hearing over Zoom during the COVID-19 pandemic); *Matter of Dependency of G.L.L.*, 499 P.3d 984, 986–87 (Wash. Ct. App. 2021) (holding that appellant's due process right to be physically present in the courtroom was not violated by conducting a hearing over Zoom during the COVID-19 pandemic when nothing in the hearing transcript suggested that there were connectivity issues or that the parties expressed difficulty observing the witnesses or hearing the court such as could cause errors in the trial court's credibility determinations).

212 (Tex. Crim. App. 2012). We continue to stand on our prior decisions, which explain the difference between "criminal prosecution"—the phrase used in the Confrontation Clause—versus "judicial proceeding"—the phrase used in *Doan*.

As we initially explained in *Pickins*,

The starting point for our analysis is the text of the Sixth Amendment's Confrontation Clause. In pertinent part, the Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Thus, based on its text, whether the Confrontation Clause applies in a community supervision revocation proceeding turns not on whether such a proceeding is a judicial proceeding as opposed to an administrative one but rather on whether such a proceeding is a "criminal prosecution." *See id.*; *see also United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015) (stating [that] the Sixth Amendment applies only to criminal prosecutions).

. . . .

We agree with the Dallas [C]ourt of [A]ppeals that *Doan* did not undercut the line of Texas cases holding that a community supervision revocation proceeding is not a stage of a criminal prosecution. *See Roberts v. State*, No. 05-16-00338-CR, 2017 WL 461354, at *2–3 (Tex. App.—Dallas Jan. 24, 2017, pet. [dism'd], untimely filed) (mem. op., not designated for publication). While *Doan* did hold that community supervision revocation proceedings are judicial proceedings and not administrative ones, *see* . . . 369 S.W.3d at 212, it "did not go so far as to say a revocation proceeding is a criminal prosecution" and did not "state, [or] even address, whether such a proceeding is a 'criminal prosecution' under the Sixth Amendment," *Roberts*, 2017 WL 461354, at *3.

The United States Supreme Court has stated that parole and probation revocation proceedings are not criminal prosecutions. [*Gagnon v.*] *Scarpelli*, 411 U.S. [778,] 782[, 93 S. Ct. 1756, 1759–60 (1973)]; *Morrissey*, 408 U.S. at 480[, 92 S. Ct. at 2600]. Based on that proposition, at least nine of the United States Circuit Courts of Appeals have concluded that the Sixth Amendment does not apply in hearings for the revocation of supervised release, probation, or parole. *See Reese*, 775

13

F.3d at 1329 (collecting cases). As noted above, Texas intermediate appellate courts have held likewise, and contrary to [appellant's] contention, the [C]ourt of [C]riminal [A]ppeals' decision in *Doan* did not undermine those holdings. Agreeing with the overwhelming weight of authority, therefore, we conclude that a community supervision revocation proceeding is not a stage of a criminal prosecution. Accordingly, the Confrontation Clause is inapplicable in those proceedings . . . .

2018 WL 3468359, at \*3–4. And earlier this year, we quoted from two cases from the Dallas Court of Appeals to explain why the Confrontation Clause does not apply to revocation proceedings:

"[A] probation revocation, whether it follows 'regular' probation or deferred[-]adjudication probation, is not a stage of criminal prosecutions." *Olabode v. State*, 575 S.W.3d 878, 881 (Tex. App.—Dallas 2019, pet. ref'd). As stated by the Dallas Court of Appeals in *Gutierrez v. State*, [No. 05-11-01380-CR, 2013 WL 3533549, at \*2 (Tex. App.—Dallas July 12, 2013, pet. ref'd) (mem. op., not designated for publication) (citations omitted)]:

Deferred[-]adjudication probation differs from regular probation in that it permits a defendant who pleads guilty to an offense and who successfully completes probation to avoid "conviction." However, the issue of appellant's guilt for the offense is determined in the initial proceedings, and the only issue to be determined in the revocation proceedings is whether to proceed with an adjudication of guilt. We conclude [that] because appellant's guilt was already determined in the prior plea proceedings, the revocation proceedings were not a phase of "criminal prosecution" for purposes of the Sixth Amendment.

*White*, 2022 WL 623450, at \*6–7; *see also Guillory v. State*, No. 11-21-00015-CR, 2022 WL 4284419, at \*2–3 (Tex. App.—Eastland Sept. 16, 2022, no pet. h.) (cataloging numerous cases holding that a proceeding to adjudicate guilt in the deferred-

14

adjudication context is not a stage of "criminal prosecution" for the purpose of the Sixth Amendment). We have recently declined to stray from our prior holdings, *see Flores*, 2022 WL 3097287, at *8, and we decline to do so now.

Because the Confrontation Clause is inapplicable to a revocation proceeding, we hold that Montgomery was not denied his Sixth Amendment right to confront the witnesses against him when the trial court held a virtual hearing on the State's petition to adjudicate his guilt.[5] Accordingly, we overrule Montgomery's second issue.

---

[5]Despite Montgomery's argument that he "was unable to effectively communicate with his own counsel at the hearing," the record (as set forth above) demonstrates that on the occasions when Montgomery asked to speak to his trial attorney or when his trial attorney asked to speak to Montgomery before concluding his cross-examination of a witness or excusing a witness, the trial court was able to put them in a virtual room together to allow them to speak away from the hearing of the other Zoom participants. *See generally Maryland v. Craig*, 497 U.S. 836, 847, 849–50, 110 S. Ct. 3157, 3164–66 (1990) (holding that although face-to-face confrontation forms the core of the Confrontation Clause's values, it is not an indispensable element of the confrontation right); *Ex parte K.W.*, 650 S.W.3d 862, 873 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.) (stating that in the context of Sixth Amendment case law interpreting the right to confrontation, videoconferencing has been allowed in limited situations and holding that "the use of remote technology allowed the grand jurors to fulfill their civic duty during a deadly pandemic in a safe and productive way").

This case is distinguishable from *Hughes v. State*, which turned on the conclusion that

> [w]ithout the possibility to speak to his counsel in confidence during witness testimony, Appellant was not truly present during his hearing. Instead, he was relegated to being a distant observer with no opportunity to confront or cross-examine as envisioned by the Confrontation Clause. We conclude that Appellant was not present at his hearing for Sixth Amendment purposes when he could not interact with his counsel regarding confrontation and cross-examination of the witness.

15

## V. Conclusion

Having overruled Montgomery's two issues, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 6, 2022

---

Therefore, under the circumstances of this particular case, the trial court violated Appellant's Sixth Amendment right to be present to confront and cross-examine witnesses.

No. 14-20-00628-CR, 2022 WL 778980, at *6 (Tex. App.—Houston [14th Dist.] Mar. 15, 2022, pet. granted).  The impairments to participation experienced by Hughes were not experienced by Montgomery.